**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. McMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,<br><br>     Defendants. | Case No.: 1:20-cv-02031-JSR<br><br>Hon. Jed S. Rakoff |
| PAUL SZANIAWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. McMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,<br><br>     Defendants. | Case No.: 1:20-cv-02223- JSR<br><br>Hon. Jed S. Rakoff |

**MEMORANDUM OF LAW IN SUPPORT OF JOHN R. HOWLAND'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND ................................................................................................ 2

II.    PROCEDURAL HISTORY ............................................................................................ 5

III.    ARGUMENT ....................................................................................................................... 5

    A.    Consolidation of the Actions Is Appropriate ..................................................... 5

    B.    Appointing Movant as Lead Plaintiff Is Appropriate ..................................... 6

        1.    Movant Filed a Timely Motion. .......................................................... 8

        2.    Movant Has the Largest Financial Interest........................................ 8

        3.    Movant Satisfies the Relevant Requirements of Rule 23........................ 9

            a.    Movant's Claims Are Typical............................................ 10

            b.    Movant Is an Adequate Representative. ....................................... 11

    C.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate. .................................. 11

IV.    CONCLUSION...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Deinnocentis v. Dropbox, Inc.,*
No. 19-cv-06348-BLF, 2020 U.S. Dist. LEXIS 8680 (N.D. Cal. Jan. 16, 2020) ................... 12

*Francisco v. Abengoa, S.A.*,
No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ................. 12

*Freudenberg v. E*Trade Fin. Corp.*,
No. 7-cv-8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 16, 2008) ............................... 9

*In re Cloudera, Inc. Sec. Litig.,*
No. 19-CV-03221-LHK, 2019 U.S. Dist. LEXIS 216750  (N.D. Cal. Dec. 16, 2019) .......... 12

*In re Deutsche Bank AG Sec. Litig.*,
328 F.R.D. 71 (S.D.N.Y. Oct. 2, 2018) ................................................................................ 10

*In re Sundial Growers Inc. Sec. Litig.,*
No. 1:19-cv-08913-ALC (S.D.N.Y. Dec. 20, 2019) ............................................................. 12

*In re Tesla, Inc. Sec. Litig.*,
No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018) ........... 12

*Isaacs v. Musk*,
No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018), ......... 12

*Jakobsen v. Aphria, Inc.*,
No. 18-cv-11376 (GBD), 2019 U.S. Dist. LEXIS 64440 (S.D.N.Y. Mar. 27, 2019) ......... 6, 10

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990) ................................................................................................. 6

*Kuriakose v. Fed. Home. Loan. Mortg. Co.*,
No. 08-cv-7281 (JFK), 1008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ............... 10

*Levin v. Res. Capital Corp.*,
No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377 (S.D.N.Y. Oct. 5, 2016) ................. 12

*O'Brien v. Pareteum Corp.,*
No. 19-cv-9767, 2020 U.S. Dist. LEXIS 4914 (S.D.N.Y. Jan. 10, 2020) ............................... 6

*Pope v. Navient Corp.*,
No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340 (D.N.J. Feb. 2, 2018) ............ 12

*Robidoux v. Celani*,
987 F.2d 931 (2d. Cir. 1993) ................................................................................................. 10

*Rosi v. Alcaris Therapeutics, Inc.*,
  No. 19-cv-7118-LTS-JLC, 2019 U.S. Dist. LEXIS 192910 (S.D.N.Y. Nov. 6, 2019) ... 7, 8, 9, 11

*Salinger v. Sarepta Therapeutics*,
  No. 17-cv-8122 (VSB), 2019 U.S. Dist. LEXIS 218248 (S.D.N.Y. Dec. 17, 2019).............. 10

*Stirling v. Ollie's Bargain Outlet Holdings, Inc.*,
  No. 19-cv-8647, 2019 U.S. Dist. LEXIS 210118 (S.D.N.Y. Dec. 5, 2019) ............................ 9

*Teamsters Local Union No. 727 Pension Fund v. Vanda Pharms., Inc.*,
  No. 19-cv-1108 (FB)(LB), 2019 U.S. Dist. LEXIS 219527 (E.D.N.Y. May 24, 2019)........ 11

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................................... 10

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
  No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011)................ 10

*Zhang v. Valaris PLC, et al.*,
  No. 1:19-cv-07816-NRB (S.D.N.Y. Dec. 23, 2019)............................................................. 12

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................. 7, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa) .............................................................................................. 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) .......................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)............................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...................................................................................... 11

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................... 11

**Rules**

FED. R. CIV. P. 23 ................................................................................................................ 1, 7, 9, 10

Fed. R. Civ. P. 42(a) ............................................................................................................... 5, 6

John R. Howland ("Movant") respectfully submits this memorandum of law in support of his motion ("Motion") to consolidate the above-captioned actions (the "Actions")[1],  appoint him as lead plaintiff, and approve his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on behalf of a putative class of purchasers of World Wrestling Entertainment, Inc., ("WWE" or the "Company") securities between February 7, 2019 and February 5, 2020, inclusive (the "Class Period"), against Defendants WWE, Vincent K. McMahon ("McMahon"), George A. Barrios ("Barrios"), and Michelle D. Wilson ("Wilson") (collectively "Defendants").

Pursuant to the PSLRA, the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of Class members.  The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff.  Movant believes that he is the "most adequate" plaintiff, as defined by the PSLRA, and should be appointed lead plaintiff based on the financial losses he suffered as a result of defendants' wrongful conduct as alleged in this litigation.  Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims and he will fairly and adequately represent the interests of the Class.  In addition, Movant's selection of Levi & Korsinsky as Lead Counsel should be approved because the firm has substantial expertise in

---

[1] The two pending securities class actions are entitled: *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc., et al.,* 1:20-cv-02031-JSR (S.D.N.Y. Mar. 6, 2020) (the "*City of Warren* Action"); and *Szaniawski v. World Wrestling Entertainment, Inc., et al.,* 1:20-cv-02223-JSR (S.D.N.Y Mar. 12, 2020) (the "*Szaniawski* Action").

securities class action litigation and the experience and resources to efficiently prosecute these Actions.

## I.   FACTUAL BACKGROUND[2]

WWE recently entered into important strategic relationships with the Kingdom of Saudi Arabia, which the Company viewed as a critical emerging market and key to the Company's growth plans and financial success in the face of flagging domestic fan engagement. ¶ 2. These relationships included a multi-year television distribution rights agreement with the Orbit Showcase Network ("OSN"), a Saudi-controlled direct broadcast satellite provider serving the Middle East and North Africa ("MENA") region, and a 10-year partnership with the Saudi General Sports Authority to host live events in Saudi Arabia. *Id.*

WWE and its management faced blowback from fans and the media for their willingness to work with the Saudis, given the human rights abuses, denial of equal rights to women and minorities, and autocratic policies imposed during the reign of King Salman bin Abdulaziz Al Saud and his son, Crown Prince Mohammad bin Salman bin Abdulaziz Al Saud ("MBS"). ¶ 3. The tensions significantly increased following the October 2, 2018 murder of journalist Jamal Khashoggi, widely believed to be ordered by MBS. *Id.*

Controversially, WWE decided to proceed with a scheduled live event in Saudi Arabia, Crown Jewel, on November 2, 2018, less than a month after Khashoggi's death, and prompted several prominent wrestlers, including John Cena and Daniel Bryan, to refuse to participate. ¶ 4. While WWE decided to go forward with the event, citing contractual commitments, its

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*City of Warren* Complaint") filed in the *City of Warren* Action.  Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Perez* Complaint.  The facts set forth in the *City of Warren* Complaint are incorporated herein by reference.

representatives openly criticized the Saudi government, including WWE's Chief Brand Officer Stephanie McMahon who stated it was an "incredibly tough decision, given that heinous act." *Id.*

Unbeknownst to investors, the events in late 2018 fomented simmering tensions between WWE and the Saudi government. ¶ 5. In particular, conservative elements of the Saudi government disliked WWE's portrayal of women and what they viewed as the questionable morality reflected in WWE programming and live shows. *Id.* At the same time, WWE was under immense pressure to justify its decision to continue working with the Saudi government and outwardly claimed that it was trying to push for change from within the country. *Id.*

By at least early 2019, tensions in the relationship between WWE and the Saudi government had reached a breaking point. ¶ 6. The Saudi government had refused to make millions of dollars in payments owed to WWE. *Id.* Further, OSN was contemplating the early termination of its obligations under its broadcasting agreement (ultimately terminated in March 2019) and had rebuffed WWE's efforts to renew the agreement. *Id.* These developments threatened WWE's ability to reach a renewed media agreement in 2019, which the Company told investors was critical to its expansion plans in the MENA region and its growth prospects. *Id.* Moreover, WWE was facing withering consumer engagement in its traditional markets, heightening the need for the Company to reach an agreement with the Saudis on favorable terms. *Id.*

Throughout the Class Period, rather than disclose these adverse developments, defendants represented that WWE had continued to bolster its relationship with Saudi Arabia and was making significant progress on the renewal of the critical media agreement and its business initiatives in the country. ¶ 7. In reality, however, the prospects for a deal continued to worsen throughout the Class Period, as the Saudi government failed to make millions of dollars in additional payments owed to WWE following a June 2019 live event held in the country and the negotiations with OSN

3

floundered. *Id.*

The behind-the-scenes turmoil began to be revealed in a series of partial disclosures. On April 25, 2019, the Company disclosed disappointing financial results and fiscal guidance, which several analysts connected to potential hiccups in the Company's dealings with the Saudis. ¶ 8. While defendants insisted that negotiations were proceeding smoothly and nearing completion, this illusion was shattered on October 31, 2019. *Id.* In connection with the release of the Company's third quarter 2019 financial results, WWE revealed significant underperformance across key metrics and shocked the market by revealing that the vaunted MENA media rights deal had been indefinitely delayed. *Id.* Around this same time, it was reported that the Saudi government had withheld tens of millions of dollars in payments owed to WWE which resulted in a decision by WWE to cut a broadcasting feed of a live event held in the country. *Id.* In retaliation, the Saudi government temporarily refused to allow several WWE wrestlers to leave the country in what was later described as akin to a "hostage situation" under the pretense of mechanical airplane issues. *Id.* Then, on January 30, 2020, WWE revealed that two of its longest serving senior executives – defendants Barrios and Wilson – had been unceremoniously ousted. *Id.* Shortly thereafter, on February 6, 2020, WWE again disclosed disappointing financial performance due to its failure to secure a favorable broadcasting deal with the Saudis and revealed that the vaunted Saudi media rights deal had been completely excised from the Company's financial forecasting. *Id.*

As a result of these disclosures, the price of WWE stock plummeted from a Class Period high of more than $100 per share to as low as $40.24 per share on February 6, 2020, representing a stunning 60% share price decline. ¶ 9. However, the Company's most senior executives – including each of the Individual Defendants – took advantage of WWE's inflated stock price to sell millions of dollars' worth of their own WWE shares during the Class Period. In a single stock

sale, WWE's Chief Executive Officer ("CEO"), defendant McMahon, despite growing behind-the-scenes problems with the Saudis, sold more than 3.2 million WWE shares for over $261 million in gross insider trading proceeds on March 27, 2019, only a few days before the end of the Company's disappointing 2019 first quarter. *Id.*

While the Individual Defendants escaped financial ruin during the Class Period by selling their shares, WWE's investors were harmed when WWE stock collapsed as the truth finally began to be revealed over time. ¶ 10.

## II.      PROCEDURAL HISTORY

Pending before this Court are the above-captioned Actions against the Defendants. Plaintiff City of Warren Police and Fire Retirement System ("City of Warren") commenced the first filed action against WWE on March 6, 2020. On that same day, counsel acting on City of Warren's behalf published a notice on *Business Wire* announcing that a securities class action had been initiated against the Defendants. *See* Exhibit C ("Press Release") to the Declaration of Shannon L. Hopkins in Support of Movant's Motion ("Hopkins Decl.").

## III.      ARGUMENT

### A.      Consolidation of the Actions Is Appropriate

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under  the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* FED. R. CIV. P. 42(a).  "[D]istrict courts have 'broad

5

discretion to determine whether consolidation is appropriate,' weighing 'considerations of judicial economy' against 'a paramount concern for a fair and impartial trial.'" *Jakobsen v. Aphria, Inc.*, No. 18-cv-11376 (GBD), 2019 U.S. Dist. LEXIS 64440, at *4 (S.D.N.Y. Mar. 27, 2019) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)).   Consolidation is particularly appropriate in securities class action litigation.  *See Id*. at *5 ("In securities actions where the complaints are based on the same public statements and reports consolidation is appropriate if there are common questions of law and fact."  (citation and quotations omitted)); *O'Brien v. Pareteum Corp.,* No. 19-cv-9767, 2020 U.S. Dist. LEXIS 4914, at *5 (S.D.N.Y. Jan. 10, 2020). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct.  The Actions name substantially the same parties as defendants.  Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions.  Accordingly, consolidation under Rule 42(a) is appropriate.  *See Jakobsen*, 2019 U.S. Dist. LEXIS 64440, at *5.

###    B.    Appointing Movant as Lead Plaintiff Is Appropriate

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)  The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most

capable of adequately representing the interests of the Class — is the class member or group of class members that:

> (aa) has either filed the complaint or made a motion in response to a notice. . .
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff.  Movant has, to the best of his knowledge, the largest financial interest in this litigation—having lost $264,016.18 as a result of his transactions and meets the relevant requirements of Federal Rule of Civil Procedure 23.  *See* Loss Chart, Ex. B to Hopkins Decl.  In addition, Movant is not aware of any unique defenses that Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed as lead plaintiff.  *See Rosi v. Alcaris Therapeutics, Inc.*, No. 19-cv-7118-LTS-JLC, 2019 U.S. Dist. LEXIS 192910, at *10 (S.D.N.Y. Nov. 6, 2019).

### 1. Movant Filed a Timely Motion.

On March 6, 2020 pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for City of Warren published the Press Release on *Business Wire*—a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against defendants herein and advising purchasers of WWE securities that they had 60 days from the publication of the March 6, 2020 notice to file a motion to be appointed as lead plaintiff. *See* Press Release, Ex. C to Hopkins Decl.; *see also Rosi*, 2019 U.S. Dist. LEXIS 192910, at *7 (filing a notice on *Business Wire* satisfied the PSLRA's notice requirement).

Movant timely filed his motion within the 60-day period following publication of the March 6, 2020 Press Release, submitted herewith sworn certifications attesting that he is willing to serve as a representative of the Class and attaching his transactions in WWE securities. *See* Hopkins Decl., Ex. A. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### 2. Movant Has the Largest Financial Interest.

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

Movant purchased WWE securities at prices alleged to have been artificially inflated by way of the Defendants' scheme and/or in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. As a result of the alleged fraud

against Defendants, Movant suffered an approximate loss of $264,016.18.  *See* Hopkins, Ex. B. Movant is unaware of any other Class member claiming a larger financial interest in this matter that has filed a motion for appointment as lead plaintiff.  Consequently, Movant believes that he has the "largest financial interest in the relief sought by the Class."  Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—to be appointed as lead plaintiff for the Class.  *See Rosi*, 2019 U.S. Dist. LEXIS 192910, at *8.

### 3.   Movant Satisfies the Relevant Requirements of Rule 23.

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).

In making its determination that a lead plaintiff candidate satisfies the requirements of Rule 23, "a moving plaintiff [need make] only . . . a preliminary showing that the adequacy and typicality requirements have been met."  *Stirling v. Ollie's Bargain Outlet Holdings, Inc.*, No. 19-cv-8647, 2019 U.S. Dist. LEXIS 210118, at *3 (S.D.N.Y. Dec. 5, 2019) (citing *Freudenberg v. E\*Trade Fin. Corp.*, No. 7-cv-8538, 2008 U.S. Dist. LEXIS 62767, at *5 (S.D.N.Y. July 16, 2008)).  This determination "need not be as complete as would a similar determination for the purpose of class certification."  *Salinger v. Sarepta Therapeutics*, No. 17-cv-8122 (VSB), 2019

U.S. Dist. LEXIS 218248, at *7 (S.D.N.Y. Dec. 17, 2019); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### a.    Movant's Claims Are Typical.

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. Oct. 2, 2018). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d. Cir. 1993)); *Kuriakose v. Fed. Home. Loan. Mortg. Co.*, No. 08-cv-7281 (JFK), 1008 U.S. Dist. LEXIS 95506, at *12 (S.D.N.Y. Nov. 24, 2008) ("A lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.").

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions, and fraudulent scheme, concerning WWE's business, operations, and financial results, violated the federal securities laws. Movant, like all members of the Class, purchased WWE securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. *Jakobsen*, 2019 U.S. Dist. LEXIS 64440, at *15 (S.D.N.Y. Mar. 27, 2019) (typicality satisfied where movants purchased stock at artificially inflated prices "suffered losses" as a result). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

**b.      Movant Is an Adequate Representative.**

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the proposed lead plaintiff has interests that are not antagonistic to other class members; and (3) the proposed lead plaintiff and class possess sufficient interest to pursue vigorous prosecution of their claims." *Teamsters Local Union No. 727 Pension Fund v. Vanda Pharms., Inc.*, No. 19-cv-1108 (FB)(LB), 2019 U.S. Dist. LEXIS 219527, at *10 (E.D.N.Y. May 24, 2019). Movant has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute these Actions, and Movant's financial losses ensure that he has sufficient incentive to ensure vigorous advocacy. *See* Hopkins Decl., Ex. B.  Finally, Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

**C.      Approving Lead Plaintiff's Choice of Counsel Is Appropriate.**

The PSLRA vests authority in the lead plaintiffs to select and retain counsel, subject only to approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Rosi*, 2019 U.S. Dist. LEXIS 192910, at *11.  Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on his behalf and has retained the firm as the Class's Lead Counsel in the event he is appointed as lead plaintiff.  Levi & Korsinsky possesses adequate experience in securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the Firm Résumé attached to the Hopkins Decl. as Ex. E. Moreover, Levi & Korsinsky has often been appointed as lead counsel in similar actions in this Circuit and across the country arising under the federal securities laws on behalf of investors.  *See Deinnocentis v. Dropbox, Inc.,* No. 19-cv-

11

06348-BLF, 2020 U.S. Dist. LEXIS 8680, at *13 (N.D. Cal. Jan. 16, 2020*); Zhang v. Valaris PLC, et al.,* No. 1:19-cv-07816-NRB (S.D.N.Y. Dec. 23, 2019); *In re Sundial Growers Inc. Sec. Litig.,* No. 1:19-cv-08913-ALC (S.D.N.Y. Dec. 20, 2019); *In re Cloudera, Inc. Sec. Litig.,* No. 19-CV-03221-LHK, 2019 U.S. Dist. LEXIS 216750, at *28-29 (N.D. Cal. Dec. 16, 2019) ("The Court…is satisfied that the lead plaintiff has made a reasonable choice of counsel" when appointing Levi & Korsinsky); *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *20 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018) (noting Levi & Korsinsky "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions."); *Pope v. Navient Corp.*, No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340, at *13–14 (D.N.J. Feb. 2, 2018) (appointing Levi & Korsinsky as lead counsel as it "is clearly capable of handling this matter—the firm has extensive experience in private securities litigation and has received numerous favorable judgments in its past representations."); *Francisco v. Abengoa, S.A.*, No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24, 2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377, at *4 (S.D.N.Y. Oct. 5, 2016) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions").  Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court grant his Motion and

enter an Order: (1) consolidating the Actions, (2) appointing Movant as lead plaintiff, (3) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

Dated: May 5, 2020                                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ *Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel. (203) 992-4523
Fax: (212) 363-7500
Email: shopkins@zlk.com

*Lead Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*