```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| CITY OF WARREN POLICE & FIRE RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      -against-<br><br>WORLD WRESTLING ENTERTAINMENT INC. et al,<br><br>      Defendants. | 20-cv-2031 (JSR)<br>20-cv-2223<br><br>MEMORANDUM ORDER |
| SZANIAWSKI, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      -against-<br><br>WORLD WRESTLING ENTERTAINMENT INC. et al,<br><br>      Defendants. | |

JED S. RAKOFF, U.S.D.J.

    Plaintiffs in the above-captioned cases bring a putative class action on behalf of similarly situated shareholders of World Wrestling Entertainment Inc. ("WWE") against WWE and three of its executives for alleged violations of the Securities and Exchange Act of 1934 ("the Exchange Act"). On May 12, 2020 this

1

Court consolidated the two actions for all purposes. ECF No. 44. Now before the Court are motions by two WWE shareholders, John R. Howland ("Howland") and the Firefighters' Pension System of the City of Kansas City Missouri Trust ("Kansas City FPS"), for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act (the "PSLRA").[1] For the following reasons, the Court appoints Kansas City FPS lead plaintiff, and its chosen counsel, Labaton Sucharow LLP ("Labaton Sucharow"), as lead counsel.

I.   Facts

The plaintiffs in this consolidated suit allege harm stemming from events following WWE's entry into strategic relationships with Saudi Arabia, including agreements to broadcast and host live WWE events in the Middle East and North Africa region. See City of Warren Police & Fire Ret. Sys. v. World Wrestling Entertainment, Inc., No. 20-cv-2031, ECF No. 1 ("Warren Compl.") ¶ 2; Szaniawski v. World Wrestling Entertainment, Inc., No. 20-cv-2223, ECF No. 1 ("Szaniawski Compl.") ¶ 3. The plaintiffs allege that the once positive relationship between WWE and Saudi Arabia began to deteriorate in 2018 and 2019 as a result of, inter alia, WWE fan pushback against the policies of Saudi

---

[1] Originally, four other individuals also moved for appointment as lead plaintiff, but have since withdrawn their motions. See ECF No. 40-43.

Arabia, the killing of journalist Jamal Khashoggi, and the Saudis' discontent with WWE's portrayal or women. Warren Compl. ¶ 3-5; Szaniawski Compl. ¶ 4-6. According to plaintiffs, these tensions ultimately led to Saudi Arabia refusing to pay millions of dollars to WWE, WWE refusing to hold events in the country, and the lucrative media deal between the two parties falling through. Warren Compl. ¶ 6-8; Szaniawski Compl. ¶ 7-10.

Plaintiffs further allege that throughout the time the relationship between WWE and Saudia Arabia was deteriorating, WWE kept this deterioration secret. Warren Compl. ¶ 7; Szaniawski Compl. ¶ 8. Plaintiffs claim that when the truth came out in a series of partial disclosures from April 2019 to February 2020, WWE stock prices dropped, injuring shareholders. Warren Compl. ¶ 8-9; Szaniawski Compl. ¶ 10-11. Furthermore, plaintiffs allege that before these corrective disclosures occurred, a number of WWE executives, i.e. the individual defendants in this case, sold millions of their WWE shares and realized enormous profits. Id. Plaintiffs allege that these actions violated §§10(b) and 20(a) of the Exchange Act, and Rule 10b-5.

## II. Appointment of Lead Plaintiff

### a. Legal Framework

The PSLRA governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is

3

brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty days of the publication, for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3). After notice has been published, the Court is then to consider any motion made by any class member to be appointed lead plaintiff and is to appoint as lead plaintiff the plaintiff that the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Such a presumption may nonetheless be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately

4

protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

    b. Analysis

Howland benefits from the PSLRA's presumption that he is the "most adequate plaintiff." First, Howland's motion was timely. ECF No. 17. Second, Howland has the largest financial interest in this matter based on his loss of $264,016.18. Decl. of Shannon Hopkins, Exh. B, ECF No. 19-2;[2] see In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005). Third, Howland has made the requisite "preliminary showing that [he] satisfies the typicality and adequacy requirements of Rule 23." In re Tronox, Inc., 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (citation omitted). Howland has preliminarily shown his claims are typical because they arise from the same series of events and are based on the same legal theories as the claims of all class members. Sallustro v. CannaVest Corp., 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015). Howland has also preliminarily shown he is adequate because the firm he selected is "qualified, experienced, and generally able to conduct the litigation;" there is no indication of a "conflict between [Howland] and the members of

---

[2] References to docket entries in this order refer to the docket of City of Warren Police & Fire C v. King.com (US) LTD (20-cv-3801)Ret. Sys. v. World Wrestling Entertainment, Inc., No. 20-cv-2031, unless otherwise indicated.

5

the class;" and Howland "has a sufficient interest in the outcome of the case to ensure vigorous advocacy" based on his substantial financial loss. Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).

Although Howland is the presumptive most adequate plaintiff, however, this presumption is rebuttable. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). Judges have declined to appoint a presumptively most adequate plaintiff in cases where a putative class member provides "proof," or evidence "of a non-speculative risk that the movant will not be adequate." Schaffer v. Horizon Pharma Plc, No. 16-cv-1763, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (listing cases). Evidence of adequacy, or lack thereof, can include the "available resources and experience of the proposed lead plaintiff," Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 191 (S.D.N.Y. 2008), and other "prox[ies] for the movant's financial and legal sophistication," Perez v. HEXO Corp., No. 19-cv-10965, 2020 WL 905753, at *2 (S.D.N.Y. Feb. 25, 2020). An examination of such evidence promotes consistency with the PSLRA's aim of ensuring a lead plaintiff can "act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [i]s delivered at a reasonable price." In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001).

Here, Kansas City FPS has presented sufficient evidence that Howland "will not . . . adequately protect the interests of the class" to rebut the lead plaintiff presumption. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). As Kansas City FPS notes, Howland's testimony that he lacks meaningful litigation experience, Transcript 5/12/20 ("Tr.") at 6:24-7:6, ECF No. 49-2, combined with career experience that appears to have no bearing on the management of securities litigation, undermine his claim that he can "meaningfully oversee and control the prosecution of this consolidated class action." Perez, 2020 WL 905753, at *3; see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (holding that the "experience of a candidate" is "relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class").[3]

Further, Howland's manner of execution of one of the most important functions of lead plaintiff, the selection and retention of counsel, gives the Court reason to question his adequacy. See 15 U.S.C. § 78u-4(a)(3)(B)(v); In re Cendant Corp. Litig., 264 F.3d 201, 265 (3d Cir. 2001) ("[O]ne of the best

---

[3] While Howland emphasizes that he is the only potential lead plaintiff with expertise in wrestling, the Court is unpersuaded that this expertise is relevant for managing lawyers in a securities action, related to WWE though the action may be.

7

ways for a court to ensure that it will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement."). As Kansas City FPS notes, in response to the Court's questions about whether he had negotiated his fee agreement with his counsel, Howland admitted that "We talked about the fees; and I agreed with it and then signed it," suggesting he had not negotiated them. Tr. at 5:22-23. In an apparent attempt to backpedal from this statement, Howland has now submitted a declaration asserting that he more aggressively negotiated the fee agreement. Decl. of John R. Howland ¶ 3, ECF No. 47. But, even if so, his negotiations still appear inadequate as the fee percentages set forth in the retainer agreement he signed are on the high side for a case like this, and very much higher than the percentages negotiated by Kansas City FPS and their counsel. Since every penny paid to plaintiff's counsel is effectively a penny out of the pockets of the plaintiff class, such minimal and unsuccessful negotiation on Howland's part strongly suggests that he will not adequately serve as lead plaintiff.

Because the Court is persuaded that Howland "will not . . . adequately protect the interests of the class" for the foregoing reasons, it now turns to the remaining candidate for lead

plaintiff, Kansas City FPS. The Court finds that Kansas City FPS's appointment as lead plaintiff is appropriate. Kansas City FPS submitted a timely motion, ECF No. 20, and claims a substantial loss of $121,996.70. Decl. of Francis P. McConville ("McConville Decl."), Exh. B, ECF No. 23-2. Furthermore, Kansas City FPS is typical because its claims are premised on the same facts and legal theories as the class. Finally, Kansas City FPS is adequate because it has chosen qualified counsel, lacks any conflict with the class, and is incentivized to vigorously prosecute this litigation.

No party has submitted evidence contradicting Kansas City FPS's adequacy. To the contrary, the evidence suggests that Kansas City FPS is the kind of sophisticated institutional investor favored by the PSLRA. See In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 46 (S.D.N.Y. 1998). As a public pension system, Kansas City FPS has nearly seventy years of fiduciary experience and undoubtedly possesses the sophistication and resources to effectively monitor counsel in complex litigation. See Kansas City FPS Supp. Mem. of Law at 9-11, ECF No. 48.[4] In addition, Barbara Davis, the Executive

---

[4] Howland objects that Kansas City FPS only provided detailed information about itself in supplemental briefing, but provides no binding authority supporting the proposition that the Court may only consider information provided in a plaintiff's opening memorandum.

Officer who will be charged monitoring the litigation has relevant experience monitoring complex litigation. Id. This experience is reflected in the highly competitive fee schedule Kansas City FPS has negotiated with its counsel of choice and by Ms. Davis's responses to the Court's questions. Tr. at 11:22-12:24. While Howland suggests that Kansas City FPS's Board of Trustees may not meet frequently enough to exercise meaningful control over the litigation, board meetings are far from the only means of overseeing counsel available to Kansas City FPS. See Transcript at 11:24-12:5 (noting that Kansas City FPS's attorney and Ms. Davis will also be monitoring the litigation).

In short, although Howland is the presumptive lead plaintiff under the PSLRA, Kansas City FPS has successfully rebutted this presumption through evidence indicating that Howland, however well-meaning and motivated to prosecute this litigation, will not adequately protect the interests of the class. In contrast, Kansas City FPS raises no such adequacy concerns and otherwise meets the requirements of the PSLRA. The Court thus appoints Kansas City FPS as the lead plaintiff in this consolidated action.

III. Appointment of Lead Counsel

Having appointed Kansas City FPS lead plaintiff, the Court must decide whether to appoint its chosen counsel, Labaton Sucharow, as lead counsel. The PSLRA directs the lead plaintiff

10

to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). "The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" Kaplan v. S.A.C. Capital Advisors, L.P., 311 F.R.D. 373, 383 (S.D.N.Y. 2015) (quoting Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)). Here, Labaton Sucharow's resume demonstrates that it possesses experience litigating securities class actions and has had success in these matters in the past. See McConville Decl., Exh D. This demonstrates that the firm is experienced and competent such that approval is warranted. Further, the Court has examined Labaton Sucharow's retainer agreement with Kansas City FPS, and while that agreement is not binding on the Court, it reinforces the Court's confidence in Labaton Sucharow's professionalism. The Court thus appoints Labaton Sucharow as lead counsel.

    SO ORDERED.

Dated:    New York, NY

            May 22, 2020

                                      United States District Judge