UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF WARREN POLICE AND FIRE
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

WORLD WRESTLING ENTERTAINMENT,
INC., VINCENT K. McMAHON, GEORGE A.
BARRIOS, and MICHELLE D. WILSON,

      Defendants.

No. 20 Civ. 2031 (JSR)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION, APPOINTMENT AS CLASS
<u>REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    Plaintiff's Allegations and Purchases of WWE Stock ............................................ 2

    B.    Procedural History .................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.    Plaintiff Does Not Have Standing To Pursue Claims for Alleged Misstatements That Were Corrected Prior to Its Purchases of WWE Stock ................................................ 8

II.    Plaintiff's Claims Are Not Typical of the Putative Class and Plaintiff Is Subject to Unique Defenses .................................................................................................... 13

    A.    Plaintiff's Claims Are Atypical Because It Did Not Purchase WWE Stock Between the Alleged Renewal-Related Misstatements and Their Correction ........................................................................................................ 13

    B.    Plaintiff Is Atypical of the Proposed Class Because It Is Subject to the Unique Defense of Non-Reliance on the Renewal-Related Statements ............... 14

    C.    Plaintiff Is Atypical of the Proposed Class Because It Is Subject to the Unique Defense of ███████████████████ ..................................... 17

    D.    Plaintiff Is Atypical of the Proposed Class Because It Is Subject to the Unique Defense of Non-Reliance on the "Agreement in Principle" Statements ....................................................................................................... 18

    E.    Plaintiff Is Atypical of the Proposed Class Because It Is Subject to Additional Unique Defenses .................................................................................. 20

III.    Plaintiff Is an Inadequate Class Representative ................................................. 24

IV.    Alternatively, the Proposed Class Definition Should Be Narrowed ................................ 25

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affiliated Ute Citizens of Utah* v. *United States*,
406 U.S. 128 (1972)......................................................................................................................13

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)......................................................................................................................12

*Baffa* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000).....................................................................................................13, 18

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) .................................................................................................23

*Basic* v. *Levinson*,
485 U.S. 224 (1988)......................................................................................................................12

*Beck* v. *Status Game Corp.*,
No. 89 Civ 2923 (DNE), 1995 WL 422067 (S.D.N.Y. July 14, 1995)..................................16

*Berwecky* v. *Bear, Stearns & Co.*,
197 F.R.D. 65 (S.D.N.Y. 2000) ..................................................................................................14

*Blank* v. *Jacobs*,
No. 03 Civ. 2111 (JS), 2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) ............................14, 16

*In re Citigroup Auction Rate Sec. Litig.*,
700 F. Supp. 2d 294 (S.D.N.Y. 2009)..........................................................................................12

*City of Bristol Pension Fund* v. *Vertex Pharms. Inc.*,
12 F. Supp. 3d 225 (D. Mass. 2014) ............................................................................................12

*In re Dr. Reddy's Lab. Ltd. Sec. Litig.*,
No. 17 Civ. 6436 (PGS), 2019 WL 1299673 (D.N.J. Mar. 21, 2019) ......................................8

*duPont* v. *Brady*,
828 F.2d 75 (2d Cir. 1987)...........................................................................................................13

*Dura Pharms., Inc.* v. *Broudo*,
544 U.S. 336 (2005)........................................................................................................................7

*ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase & Co.*,
553 F.3d 187 (2d Cir. 2009).........................................................................................................20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)...........................................................................................................23

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Francisco* v. *Abengoa, S.A.*,
No. 15 Civ. 6279 (ER), 2020 WL 4940752 (S.D.N.Y. Aug. 21, 2020) ..............................8, 9

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 1760 (2d Cir. 1990)...........................................................................................14, 22

*George* v. *China Auto. Sys., Inc.*,
No. 11 Civ. 7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) ..................................23

*Gordon* v. *Sonar Capital Mgmt. LLC*,
92 F. Supp. 3d 193 (S.D.N.Y. 2015)......................................................................................13

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).........................................................................................................7, 12

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
No. 20 Civ. 4420 (PAE), 2020 WL 5548856 (S.D.N.Y. Sept 16, 2020)................................14

*Hevesi* v. *Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004).......................................................................................................9

*Kamerman* v. *Ockap Corp.*,
112 F.R.D. 197 (S.D.N.Y. 1986) .............................................................................................14

*Karth* v. *Keryx Biopharmaceuticals, Inc.*,
334 F.R.D. 7 (D. Mass. 2019)............................................................................................9, 12

*Kline* v. *Wolf*,
88 F.R.D. 696 (S.D.N.Y. 1981) ...............................................................................................14

*Kovaleff* v. *Piano*,
142 F.R.D. 406 (S.D.N.Y. 1992) .............................................................................................14

*Landry* v. *Price Waterhouse Chartered Accountants*,
123 F.R.D. 474 (S.D.N.Y. 1989) .............................................................................................16

*Lapin* v. *Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) .......................................................................................13, 22

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011).....................................................................................................22

*Maywalt* v. *Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995).......................................................................................................7

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .............................................................................................15

iii

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*NECA–IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)...............................................................................10, 11

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    988 F.Supp.2d 406 (S.D.N.Y.2013)..............................................................................20

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)............................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016)............................................................................................7

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015)..........................................................................15

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016)..................................................................................15

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018)..........................................................................22

*Ret. Bd. of the Policemen's Annuity & Benefit Fund* v. *Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)..........................................................................................10

*Rocco* v. *Nam Tai Elecs., Inc.*,
    245 F.R.D. 131 (S.D.N.Y. 2007)..................................................................................14

*Schwab* v. *E*TRADE Fin. Corp.*,
    752 F. App'x 56 (2d Cir. 2018)....................................................................................13

*Stevelman* v. *Alias Rsch., Inc.*,
    No. 91 Civ. 682 (EBB), 2000 WL 888385 (D. Conn. June 22, 2000)..................................23

*Stoneridge Inv. Partners, LLC* v. *Sci.-Atlanta*,
    552 U.S. 148 (2008). (Mot. 22.) ..................................................................................13

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) ..................................................................................23

*In re U.S. Foodservice, Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013)............................................................................................7

*Villella* v. *Chem. & Mining Co. of Chile Inc.*,
    No. 15 Civ. 2106 (ER), 2018 WL 2958361 (S.D.N.Y. June 13, 2018)..................................4

*Waggoner* v. *Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)............................................................................................13

iv

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Wal-Mart Stores, Inc.* v. *Dukes*,
  564 U.S. 338 (2011)............................................................................................7

**STATUTES**

15 U.S.C. § 78j.............................................................................................7, 12, 15

15 U.S.C. § 78u-4(b)(4)........................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23...................................................................................................7

Fed. R. Civ. P. 23(a)(3).......................................................................................12

Fed. R. Civ. P. 23(a)(4).......................................................................................22

Fed. R. Civ. P. 23(c)(1)(B)..................................................................................23

Defendants World Wrestling Entertainment, Inc. ("WWE" or the "Company"), Vincent K. McMahon, George A. Barrios, and Michelle D. Wilson respectfully submit this Memorandum of Law in Opposition to Lead Plaintiff's Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (Doc. 86, "Mot.").

## PRELIMINARY STATEMENT

Firefighters' Pension System of the City of Kansas City, Missouri Trust ("Kansas City FPS" or "Plaintiff") moves to certify a class of purchasers of WWE stock that purportedly relied on and were injured by two distinct sets of alleged misrepresentations: (1) those from February 7, 2019 to July 25, 2019 regarding WWE's "renewal" of its media rights agreement for the Middle East, and (2) those from July 25, 2019 to February 5, 2020 regarding the Company's belief that it had an "agreement in principle" with Saudi authorities for certain live event and media rights in the Middle East.  Plaintiff seeks to represent investors that claim damages resulting from the decline of WWE's stock price allegedly caused by both sets of statements.  But Plaintiff has admitted that on July 25, 2019—one month *before* it purchased any WWE stock—Defendants *fully* disclosed and "informed the market" that its media rights agreement for the Middle East with Orbit Showtime Network ("OSN") was terminated and would not be renewed.  Because Plaintiff did not purchase stock between the time of the alleged misstatements regarding the "renewal" of the Company's media rights agreement for the Middle East and the disclosure of the termination of the OSN agreement, Plaintiff (1) does not have standing to pursue claims relating to these statements; (2) has claims that are atypical of the proposed class; and (3) is subject to unique defenses.  Plaintiff is also subject to unique defenses because— ███████

████████████████████████████████████████████████████

███████—it did not rely upon the information Plaintiff alleges the Company misrepresented.

Class certification is also improper because Kansas City FPS, which has no interest in the first of the two purported misrepresentations Plaintiff alleges, has economic interests that diverge from the class it seeks to represent.  The concerns raised by these divergent interests are heightened by the fact that, on many of the key issues in this case, Plaintiff's investment advisor supports *Defendants'* arguments and undermines the putative class's positions as set forth in the Complaint.  For these reasons and those discussed below, Plaintiff's Motion should be denied.

Alternatively, if the Court does certify a class, it should define the class period to begin on July 25, 2019—the earliest date on which the claims Plaintiff arguably has standing to pursue could have arisen—and exclude any investor who sold all of its WWE stock before the first corrective disclosure thereafter, which Plaintiff alleges occurred on October 31, 2019.

## FACTUAL BACKGROUND[1]

### A.    Plaintiff's Allegations and Purchases of WWE Stock

In its order on Defendants' motion to dismiss, the Court characterized Plaintiff's allegations as being "grouped into two broad categories:  misrepresentations related to the status of the OSN Agreement; and misrepresentations related to the status of a replacement media rights agreement with Saudi Arabia."  (Doc. 68, "MTD Order" at 7; *see also id.* at 8–30.)

Plaintiff first alleges that, beginning on February 7, 2019, Defendants made misstatements about the "renewal" of WWE's pay television rights agreement for the Middle East region.  Plaintiff claims these statements were "plainly false" because "the Company had known for months" that the agreement it had with the Kuwaiti-owned and United Arab Emirates-

---

[1]    Defendants dispute Plaintiff's claims and allegations.  But, for purposes of this Motion only, the allegations in the Consolidated Amended Class Action Complaint (Doc. 57, "CAC") are accepted as true.  References to "Ex. _" in this Opposition are to exhibits to the Declaration of Neil P. Kelly, dated November 3, 2020, submitted herewith.

based OSN "would not be renewed and would, in fact, be terminated *early*."  (CAC ¶ 153; Mot. 5–6.)  Plaintiff claims these misrepresentations caused losses to WWE stockholders when, on April 25, 2019, the Company "finally announced . . . lower-than-expected guidance for the second-quarter 2019," which partially revealed the truth that it stopped receiving revenue from the OSN agreement.  Plaintiff alleges WWE's stock price declined more than 13% in response. (CAC ¶¶ 13, 241, 248, 371, 372.)  According to Plaintiff, the termination of the OSN agreement (and the fact that it would not be renewed) was "finally acknowledged" and "finally disclosed" to the market on July 25, 2019, when Defendants "finally informed the market" of this corrective information.  (*See* CAC ¶¶ 14, 155, 165, 168, 261; Mot. 6.)

Plaintiff first purchased WWE stock on August 30, 2019, more than one month after Defendants disclosed that the OSN agreement had been terminated and more than four months after the decline in WWE's stock price allegedly caused by the April 25, 2019 disclosures.[2] Plaintiff only bought WWE stock after its investment advisor, William Blair & Co., ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████[3] As William Blair's representative testified and the contemporaneous documents establish, ████████████████████████████████████████████████████████████████

---

[2]    Doc. 23-1; Ex. A, William Blair, "Detailed Transaction Summary: WWE – Firefighters' Pension System of the City of Kansas City, Mo. (May 31, 2011–Aug. 1, 2020) (WILLIAM BLAIR_000705); Ex. B, Davis Dep. 138:11–16.

[3]    *E.g.*, Ex. C, Email from L. Thompson to J. Jones *et al.* re. WWE updates (May 29, 2019) (WILLIAM BLAIR_000069); Ex. D, Email from D. Crowe to J. Jones *et al.* re. WWE write up attached (July 22, 2019) (WILLIAM BLAIR_000082); Ex. E, Email from L. Thompson to D. Crowe *et al.* re. WWE (July 25, 2019) (WILLIAM BLAIR_000163); Ex. F, Thompson Dep. 48:3–49:12, 50:3–51:2, 52:18–53:8, 59:5–23, 60:4–18, 61:5–64:2, 64:14–66:14, 69:12–22, 70:14–71:8, 87:24–89:3, 90:12–91:19, 101:22–102:18, 128:7–11, 134:7–15.

███████████████████████████████████████████████████

█████████████[4] William Blair's representative confirmed that ███████████

███████████████████████████████████████████████████

████████████[5] William Blair's knowledge is attributable to Plaintiff because

███████████████████████████████████████████████████

███████████████. *See Villella* v. *Chem. & Mining Co. of Chile Inc.*, No. 15 Civ.

2106 (ER), 2018 WL 2958361, at *5 (S.D.N.Y. June 13, 2018).[6]

Plaintiff next alleges that, on the same day Defendants disclosed the termination of the

OSN agreement, the Company stated that it believed it had reached an "agreement in principle

---

[4]   Ex. G, William Blair Notes (July 29, 2019) (WILLIAM BLAIR_000344 at -352); Ex. F, Thompson Dep. 148:7–16 ██████████████████████████████████
████████████████████████████████████████████
██████████████); *see also id.* 112:9–113:18, 154:20–155:11, 157:6–9, 281:8–11.

[5]   Ex. F, Thompson Dep. 157:6–9; *see also id.* 215:20–216:4 (████████████
███████████████████████████████████████████████
███████).

[6]   Ex. H, Firefighters' Pension System of the City of Kansas City, Mo. Trust, "Investment Mgmt. Agreement" (May 11, 2011) (WWE_KCFIRE_00000210 at -217–20); Ex. I, Firefighters' Pension System of the City of Kansas City, Mo. Trust, "Second Am. to Invest. Mgmt. Agreement" (June 27, 2014) (WWE_KCFIRE_00000205); Ex. B, Davis Dep. 60:14–23 (███
██████████████████████████████████████████████
███████████████████████████████████████); *id.*
119:17–21 (██████████████████████████████████████
██████████████████████████████████████████
██████████. Plaintiff also ██████████████████████████
██████. *See* Ex. B, Davis Dep. 107:2–8.

with the Saudi General Sports Authority on the broad terms" for a second annual live event in

Saudi Arabia and for media rights in the Middle East region.  (CAC ¶¶ 256, 260; Mot. 6.)

Relying heavily on unsworn allegations from a "confidential witness" ("CW-1")—who does not

claim that he interacted with the Individual Defendants, or participated in the negotiation of

WWE's media rights agreement, or worked at the Company—Plaintiff claims in the CAC and its

present Motion that the "agreement in principle" statements were misleading because the

relationship between WWE and the Saudis was "deteriorating" and Defendants knew they were

not close to finalizing an agreement.  (*See* CAC ¶¶ 15, 29, 304, 377; Mot. 6.)  Despite the

centrality of CW-1's allegations to Plaintiff's claims relating to the "agreement in principle"

statements—and notwithstanding the weight the Court ascribed CW-1's allegations in denying

Defendants' motion to dismiss[7]—Plaintiff did not include CW-1 in its initial disclosures (served

fewer than three weeks after the Court's motion to dismiss decision) and informed Defendants

that Plaintiff does not plan "to call CW-1 as a witness or otherwise rely on his testimony."[8]

---

[7]   MTD Order at 15–18.

[8]   Ex. J, Email from C. Fox to R. Tarlowe *et al.* re. WWE - CW-1 (Oct. 14, 2020).



William Blair's testimony and records reflect that ████████████████████████████ ██████████████████████████████████████████████████████.  As one William Blair analyst noted, █████████████████████████████████████████████ ███████████████████████████████████[10] Despite this ██████████████████████ began purchasing WWE stock ███████ on August 30, 2019.[11]

## B.    Procedural History

The Court has not yet considered the fact that all of Kansas City FPS's purchases of WWE stock occurred after it alleges the "renewal" misstatements were fully corrected and the market was "informed" of the OSN agreement's termination.  This issue was not addressed during the contest for lead plaintiff status, likely because the only other candidate to serve as lead

---

[9] ████████████████████████████████████████████████ ██████████████████████████

[10]   Ex. G, William Blair Notes (July 29, 2019) (WILLIAM BLAIR_000344 at -352); *see also* Ex. F, Thompson Dep. 139:8–141:3, 144:8–19, 155:12–156:9.

[11]   Doc. 23-1; ████████████████████████████████████████ █████████████████████████

[12]   Ex. F, Thompson Dep. 159:21–160:21, 161:18–21, 171:17–23, 176:20–177:23, 269:6–23.

[13]   *Id.* 199:4–205:6.

plaintiff also did not purchase any WWE stock before July 25, 2019.  (*See* Doc. 19-2.)  But it is apparent that Plaintiff is aware of the significance of the date of its stock purchases.

On the afternoon of September 23, 2020—the deadline for the joinder of additional parties (Doc. 79) and four months after the appointment of Kansas City FPS as Lead Plaintiff—Plaintiff's counsel asked Defendants to consent to a last-minute extension of this deadline so that counsel could potentially "add an additional class representative at class certification."[14] Ultimately, Kansas City FPS did not add another plaintiff or class representative or file an amended pleading, and the deadlines for it to do so passed.  (Doc. 79.)

## ARGUMENT

"[A] plaintiff[] wishing to proceed through a class action must actually *prove*—not simply plead—that [its] proposed class satisfies each requirement of [Federal Rule of Civil Procedure 23]."  *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("*Halliburton II*").  The Court must conduct a "rigorous analysis" to determine whether the proposed class representative proved each element by a preponderance of the evidence.  *See Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350–51 (2011) (citations omitted).  In doing so, the Court "must make a definitive assessment of [these] requirements, notwithstanding their overlap with merits issues."  *In re U.S. Foodservice, Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (quotations omitted).  This analysis ensures that the interests of absent class members are protected.  *See Maywalt* v. *Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).  The Court must also confirm that the class representative is incentivized to pursue all of

---

[14]   Ex. L, Email from A. Coquin to R. Tarlowe *et al.* re. WWE - Class Certification (Sept. 23, 2020).

the class's claims.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827

F.3d 223, 231 (2d Cir. 2016).

**I.      Plaintiff Does Not Have Standing To Pursue Claims for Alleged Misstatements
          That Were Corrected Prior to Its Purchases of WWE Stock**

          Plaintiff lacks standing to pursue claims relating to the "renewal" statements because

Plaintiff concedes that the Company fully disclosed the termination of the OSN agreement

before Plaintiff purchased WWE stock.  A section 10(b) plaintiff must allege that

misrepresentations "caused the loss" for which the plaintiff seeks to recover.  15 U.S.C. § 78u-

4(b)(4); *see Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 346–47 (2005).  "[A] plaintiff who

purchased after a corrective disclosure was made would have no standing, because relying on the

earlier misrepresentation would no longer be reasonable in light of the new information;

furthermore, the market is assumed to have processed the correction, which would be reflected in

the stock price."  *Francisco* v. *Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2020 WL 4940752, at *17

(S.D.N.Y. Aug. 21, 2020) (quoting *City of Bristol Pension Fund* v. *Vertex Pharms. Inc.*, 12

F. Supp. 3d 225, 234–35 (D. Mass. 2014)); *e.g.*, *In re Dr. Reddy's Lab. Ltd. Sec. Litig.*, No. 17

Civ. 6436 (PGS), 2019 WL 1299673, at *13 (D.N.J. Mar. 21, 2019) (finding plaintiff lacked

standing for claims regarding misstatements that were corrected prior to plaintiff's purchase of

securities).

          In *Francisco*, the court held that plaintiffs lacked standing to assert claims relating to

defendants' characterization of debt when they purchased after the last corrective disclosure

about this debt.  2020 WL 4940752, at *16–17.  While plaintiffs argued that their post-disclosure

purchases were affected by the defendants' "sustained course of conduct that existed prior to and

after their purchase" and that the pre-purchase revelation was a "partial disclosure," the court

noted these arguments were contrary to plaintiffs' allegations that the market learned of

defendants' mischaracterization as a result of this disclosure.  *Id.*  Because the plaintiffs chose to purchase the securities at issue after this disclosure, "[t]heir alleged injuries [could] not be readily traced to [defendants'] alleged [misstatements]" and they lacked standing.  *Id.* at *17.

As in *Francisco*, where "[i]n spite of the revelatory nature of the [corrective] disclosures, Plaintiff chose to purchase" the securities at issue, *id.*, Plaintiff in this case bought WWE stock after Defendants "finally acknowledged," "finally disclosed," and "finally informed the market" of the OSN agreement's termination.  (*See* CAC ¶¶ 14, 155, 165, 168, 261; Mot. 6.)[15]  Like *Francisco*, this is "not a case where a careful and sophisticated analysis was required before the disclosures could have been considered reasonably available to shareholders." 2020 WL 4940752, at *17 (quotations omitted).[16]

██████████████████████████████████████████

█████████████████████████████████████

████████[17]  As William Blair's representative testified, ████████

████████████████████████████████████.[18] █████████

---

[15]  Ex. B, Davis Dep. 191:23–192:10 (██████████████████████████

███████████████████████████████████████████████

██████████).

[16]  That Plaintiff does not label the July 25, 2019 announcement of the termination of the OSN agreement a "corrective disclosure" is of no import.  It is black letter law in this Circuit that a corrective disclosure "reveal[s] some then-undisclosed fact with regard to the specific misrepresentations alleged."  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010).  This is precisely what Plaintiff alleges the July 25, 2019 announcement did.

[17]  *See* Ex. G, William Blair Notes (July 29, 2019) (WILLIAM BLAIR_000344 at -352).

[18]  Ex. F, Thompson Dep. 148:7–16 ("█████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████.

This case differs significantly from the more common scenario in which a class may be certified despite the class representative not having individual standing to pursue each claim alleged. Here, according to Plaintiff's own allegations, there was a full and complete disclosure of the termination of the OSN agreement before Plaintiff purchased any WWE stock. Plaintiff's own allegations and Motion thus make clear that Defendants did not commit "the same wrongful acts in the same manner against all members of the class." *Hevesi* v. *Citigroup Inc.*, 366 F.3d 70, 82–83 (2d Cir. 2004) (quotations omitted). Plaintiff could not have been injured by the "same wrongful acts" that allegedly injured other class members because the allegedly misrepresented information was fully disclosed before Plaintiff purchased WWE stock. Plaintiff thus lacks standing to represent a class asserting claims relating to them. *See Karth* v. *Keryx Biopharmaceuticals, Inc.*, 334 F.R.D. 7, 18 (D. Mass. 2019) (denying class certification where plaintiff bought shares after a corrective disclosure, "remov[ing] his standing to bring the claims on behalf of the proposed class").

Nor do these distinct statements raise "the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Ret. Bd. of the Policemen's Annuity & Benefit Fund* v. *Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (citations omitted). Whether the making of a false or misleading statement "implicates the same set of concerns for distinct sets of plaintiffs . . . will depend on the nature and content of *the specific misrepresentations alleged*." *NECA–IBEW Health & Welfare Fund* v. *Goldman Sachs*

_____

████████████████████████████████████████████████████████████; *see supra* n.4.

*& Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (emphasis added).  Plaintiff's "agreement in principle" claims turn on different alleged misrepresentations, different facts, different proof, and caused different alleged injuries to Plaintiff than the "renewal" statements.

 Plaintiff alleges that Defendants' statements about the "renewal" of the media rights agreement for the Middle East were misleading because Defendants received notice of the OSN agreement's termination; knew that OSN was ceasing its sports programming; and knew that OSN was not an option for future media rights agreements.  (CAC ¶¶ 11, 12, 149–64.)  Plaintiff's theory is that class members who purchased WWE stock after February 7, 2019 were misled into believing the OSN agreement would be "renewed" and suffered losses after the purported April 25, 2019 partial realization of the undisclosed risk of the agreement's termination.  (CAC ¶ 241; Mot. 5.)  According to Plaintiff, that risk was *fully* disclosed by July 25, 2019, one month before it purchased WWE stock.  (CAC ¶¶ 14, 155, 165, 261; Mot. 6.)  Whether anyone suffered losses caused by the statements between February 7 and July 25, 2019 will turn on, *inter alia*, investors' understanding of the word "renewal" in relation to media rights agreements; whether the market knew before July 25, 2019 that OSN was ceasing its broadcast of sports content; whether the market knew that WWE content was taken off OSN before July 25, 2019; and whether any of this information was material to investors.  The proof that will answer these questions is entirely independent of what was said on or after July 25, 2019 concerning a separate potential agreement with a different counterparty.  Indeed, the evidence from Plaintiff on this issue actually supports *Defendants'* arguments and undermines the proposed class's putative claims.

 Plaintiff's claims regarding the "agreement in principle" statements are based on an entirely different theory of loss—that investors were misled into believing the new "agreement in

principle" with the Saudis was assured.  Plaintiff argues these statements were misleading because Defendants' belief that they had reached an "agreement in principle" with the Saudis was not reasonable in light of the parties' relationship and how far apart they allegedly were in negotiations.  (*E.g.*, CAC ¶¶ 15, 193–95, 264, 275, 281, 361.)  Whether any investors suffered losses caused by these statements between July 25, 2019 and February 5, 2020 will turn on, *inter alia*, evidence regarding the negotiations with the Saudis; the status of those negotiations at the time the challenged statements were made; what WWE employees believed about the progress of the negotiations and their chances of concluding in an agreement before the end of 2019; and whether these beliefs were reasonable in light of the facts at the time.  Because these alleged injuries "could turn on very different proof," the claims relating to the two sets of challenged statements do not "share the same set of concerns."  *NECA*, 693 F.3d at 163.

Perhaps recognizing Plaintiff's standing deficiencies, Plaintiff's counsel asked Defendants for a last-minute extension of the deadline for the joinder of parties so that counsel could potentially "add an additional class representative at class certification."[19]  But Plaintiff did not add another plaintiff or class representative or file an amended pleading.  "[I]n conducting the lawsuit on behalf of all class members and all those who have brought complaints that have been consolidated under their leadership, Lead Plaintiffs have a responsibility to *identify and include named plaintiffs* who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims."  *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308 (S.D.N.Y. 2009) (quotations omitted).  Because Plaintiff did not do so, class certification should be denied.  *E.g.*,

---

[19]   Ex. L, Email from A. Coquin to R. Tarlowe *et al.* re. WWE - Class Certification (Sept. 23, 2020).

*Karth*, 334 F.R.D. at 18; *Vertex Pharms. Inc.*, 12 F. Supp. 3d at 234–35.

## II.   Plaintiff's Claims Are Not Typical of the Putative Class and Plaintiff Is Subject to Unique Defenses

### A.   Plaintiff's Claims Are Atypical Because It Did Not Purchase WWE Stock Between the Alleged Renewal-Related Misstatements and Their Correction

For a class to be certified, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are atypical of the proposed class because it cannot establish reliance on the "renewal" statements. Reliance "is an essential element of the §10(b) private cause of action."  *Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013) (quotations omitted).  Plaintiff seeks to invoke the "fraud-on-the-market" presumption of reliance under *Basic* v. *Levinson*, 485 U.S. 224 (1988).  (CAC ¶¶ 383–86; Mot. 14–15.)  But to invoke *Basic*, Plaintiff must establish that it "traded the stock between when the misrepresentations were made and when the truth was revealed."  *Halliburton II*, 573 U.S. at 278.  "[I]f the plaintiff did not buy or sell the stock after the misrepresentation was made but before the truth was revealed, then [it] could not be said to have acted in reliance on a fraud-tainted price."  *Id*.

Because Plaintiff did not purchase any WWE stock between Defendants' alleged misstatements regarding the "renewal" of its media rights agreement for the Middle East and when Defendants allegedly "disclosed" the termination of the OSN agreement and "informed the market" on July 25, 2019 that it would not be "renewed," Plaintiff cannot invoke the *Basic* presumption of reliance.  *Id.*  Absent a class-wide presumption of reliance, the Court cannot certify the proposed class because each member would need to prove the required element of reliance on the "renewal" statements individually, defeating "typicality."  *See Waggoner* v.

*Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017).[20]

**B.     Plaintiff Is Atypical of the Proposed Class Because It Is Subject to the Unique Defense of Non-Reliance on the Renewal-Related Statements**

Class certification should also be denied because Plaintiff is subject to a unique defense that is "meritorious enough to require the plaintiff to devote considerable time to rebut [it]." *Lapin* v. *Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (citations omitted).   A class representative's susceptibility to a unique defense defeats typicality when it introduces the risk that party-specific issues will become the focus of the case, to the detriment of class-wide issues and absent class members. *See Baffa* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *Gordon* v. *Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (Rakoff, J.).

Because Plaintiff first purchased WWE stock more than one month *after* it alleges the market was "finally informed" that the OSN agreement was terminated, Plaintiff is subject to the defense that it did not rely on the "renewal" statements.   As then-Judge Forrest summarized:

> A named plaintiff who has engaged in a post-disclosure purchase is subject to the defense that the alleged misstatements or omissions were really not a factor in the

---

[20]   Plaintiff attempts to fall back on the presumption of reliance laid out in *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972), which is available "if there is an omission of a material fact by one with a duty to disclose."  *Stoneridge Inv. Partners, LLC* v. *Sci.-Atlanta*, 552 U.S. 148, 159 (2008).  (Mot. 22.)  But the Second Circuit has made clear that the *Affiliated Ute* presumption "applies only when . . . there are 'no positive statements.'" *Schwab* v. *E\*TRADE Fin. Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018) (quoting *Waggoner*, 875 F.3d 95).  Plaintiff's CAC is replete with allegations of affirmative misstatements.  (*E.g.*, CAC ¶¶ 149–53, 157–58, 160, 163–65, 224–54.)  Because Plaintiff's case is primarily about misrepresentations, not omissions, the *Affiliated Ute* presumption does not apply.  *See Waggoner*, 875 F.3d at 96; *Schwab*, 752 F. App'x at 59–60.  In any event, Plaintiff cannot invoke the *Affiliated Ute* presumption of reliance on purported renewal-related omissions for the same reason it cannot invoke the *Basic* presumption of reliance on alleged renewal-related misstatements—it purchased after these "omissions" were "corrected."  *See Waggoner*, 875 F.3d at 102; *duPont* v. *Brady*, 828 F.2d 75, 76 (2d Cir. 1987) (holding that a defendant can rebut the presumption of reliance on an omission by showing that "plaintiff did not rely on the omission in making the investment decision").

purchasing decision but rather that other investment considerations drove the decision. . . . This will require that each of the named plaintiffs expend considerable time on unique defenses—precisely the situation the case law does not condone.

*George* v. *China Auto. Sys., Inc.*, No. 11 Civ. 7533 (KBF), 2013 WL 3357170, at *6–7

(S.D.N.Y. July 3, 2013).  To avoid this situation, courts in this Circuit frequently deny class

certification where the lead plaintiff purchased class securities after a corrective disclosure.[21]

Thus, in *George*, Judge Forrest denied class certification, noting that the named plaintiffs made

purchases of the securities at issue after the alleged "truthful" disclosure and that the defendants

"stated an intention to aggressively pursue this line of inquiry."  *Id.*

    The record confirms that Plaintiff is particularly susceptible to the unique defense of non-

reliance on the "renewal" statements, which Defendants intend to vigorously pursue. ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ Litigating why

Plaintiff ███████████████████ nonetheless purchased WWE stock would be a detour from

the alleged class-wide issues.  In similar circumstances—a class representative that purchased

securities "despite having notice of . . . the alleged fraud"—the Second Circuit has affirmed

denial of class certification. *See Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner*

---

[21]    *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 Civ. 4420 (PAE), 2020 WL 5548856, at *7 (S.D.N.Y. Sept 16, 2020) ("In this District, a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative." (citations omitted)); *Rocco* v. *Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007); *Berwecky* v. *Bear, Stearns & Co.*, 197 F.R.D. 65, 69–70 (S.D.N.Y. 2000); *Kovaleff* v. *Piano*, 142 F.R.D. 406, 408 (S.D.N.Y. 1992); *Kamerman* v. *Ockap Corp.*, 112 F.R.D. 197, 198 (S.D.N.Y. 1986); *Kline* v. *Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981); *Blank* v. *Jacobs*, No. 03 Civ. 2111 (JS), 2009 WL 3233037, at *6–7 (E.D.N.Y. Sept. 30, 2009).

*& Smith, Inc.*, 903 F.2d 176, 179–80 (2d Cir. 1990), *abrogated on other grounds by Microsoft*

*Corp.* v. *Baker*, 137 S. Ct. 1702 (2017). ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████.[22]

     This Court has noted that when a section 10(b) plaintiff made all of its purchases of class

securities after corrective disclosures, it "raise[d] serious questions" regarding the plaintiff's

"reliance on the alleged misrepresentations and omissions." *In re Petrobras Sec. Litig.*, 104

F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (Rakoff, J.). Here, Plaintiff made *all* of its purchases of

WWE stock after July 25, 2019 when it and the rest of the market were "informed" about the

termination of WWE's agreement with OSN. (*E.g.*, CAC ¶¶ 14, 168; Mot. 6.) This case is thus

more stark than the more frequent situation with which this Court has been presented, where a

lead plaintiff made purchases in reliance on alleged misrepresentations *before* corrective

disclosures, then made "additional purchases" after the disclosures. *In re Petrobras Sec. Litig.*,

312 F.R.D. 354, 360 (S.D.N.Y. 2016), *aff'd in part*, *vacated in part* 862 F.3d 250 (2d Cir. 2017).

While this Court has found that a plaintiff's post-disclosure purchases were "irrelevant" to its

"*earlier* reliance," here, there is no earlier *pre-correction* reliance because Plaintiff does not

allege *any* purchases of WWE stock before Defendants "informed the market" about the

termination of the OSN agreement. *Id.* (emphasis added); *see also In re Monster Worldwide,*

*Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (Rakoff, J.).

---

[22] Ex. M, Minutes of the Bd. of Trs., the Firefighters' Pension Sys. (Apr. 24, 2020)
(WWE_KCFIRE_00000520 at -523) (████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████).

**C.    Plaintiff Is Atypical of the Proposed Class Because It Is Subject to the Unique Defense of** █████████████████████████████



Plaintiff is also subject to the unique defense that ████████████████████████ ████████████████████████████████ renders ███████████████████████████ █████████ atypical of other class members.  William Blair's representative testified that ████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████████████████████.[23]  William Blair also ███████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.[24]  And, the same William Blair representative testified about ██████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████.[25] This information—█████████████████████ ████████████████████████████████████—renders ███████████ ████████████ to purchase WWE stock ███████████████ atypical from the class.

Courts in this Circuit often find that a proposed class representative is atypical when it is subject to claims it had access to non-public information, raising the risk of a unique defense that it relied on information to which other class members did not have access.  *See, e.g.*, *Landry* v. *Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("[W]hether these defenses will be successful is of no matter. . . . Each of these plaintiffs would be required to

---

[23]    Ex. F, Thompson Dep. 90:12–91:19, 93:13–94:11, 95:13–96:24, 97:16–98:24.

[24]    *Id.* 118:7–126:1.

[25]    *Id.* 131:19–132:17.

devote considerable time to rebut the claim that their purchases were based not on the integrity of the market, but on non-public information that they received . . . . Clearly, this situation would prejudice absent class members."); *Beck* v. *Status Game Corp.*, No. 89 Civ. 2923 (DNE), 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995); *Blank*, 2009 WL 3233037, at *7.

### D.   Plaintiff Is Atypical of the Proposed Class Because It Is Subject to the Unique Defense of Non-Reliance on the "Agreement in Principle" Statements

Plaintiff is similarly susceptible to the unique defense of non-reliance on Defendants' statements about WWE's "agreements in principle" with the Saudis.  Plaintiff claims these statements were misleading because Defendants knew "the new media-rights agreement . . . would not be completed in 2019, given how far apart the parties were at this point during their negotiations."  (CAC ¶ 264.)  The record shows that ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████
███████████████████████.[26]  In addition, ████████████████████
████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████.[27]  The William Blair representative also testified that ██

---

[26]   Ex. G, William Blair Notes (July 29, 2019) (WILLIAM BLAIR 000344 at -352) ███████
█████████████████████; *supra* n.12.

[27]   Ex. F, Thompson Dep. 161:18–162:18 ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████



[28]

In making its decision to invest in WWE,

[29]

[30]

William Blair's representative further testified that                              the purported incident in which Plaintiff alleges certain WWE employees and talent were prevented from leaving Saudi Arabia because of a dispute between the Company and the Kingdom— which Plaintiff trumpets as undisclosed evidence of the "tensions" in the parties' deteriorating relationship that rendered the "agreement in principle" statements of belief false and misleading (CAC ¶¶ 208–22)—

[31]  Plaintiff is thus susceptible to unique defenses regarding the "agreement in principle" claims it asserts and for which it seeks to represent a class.

---

; *see also id.* 165:3–166:5, 166:18–167:4.

[28]  Ex. F, Thompson Dep. 199:4–205:6.

[29]  *Id.* 90:9–98:10, 115:14–126:1, 128:12–132:17.

[30]  *See infra* nn.36–45.

[31]  Ex. F, Thompson Dep. 195:23–197:19.

E.     **Plaintiff Is Atypical of the Proposed Class Because It Is Subject to Additional Unique Defenses**

In addition to the reasons discussed above, Kansas City FPS is a uniquely improper class representative because—on key issue after key issue—the evidence regarding its knowledge and decision to invest in WWE stock actually supports *Defendants'* arguments and contradicts the proposed class's claims. The risk this record raises that litigation of party-specific issues will become the focus of the case, to the detriment of class-wide issues and absent class members, strongly supports denial of the present Motion. *See Baffa*, 222 F.3d at 60.

For example, Plaintiff claims that the "renewal" statements were misleading because, at the time WWE made these statements, it knew the OSN agreement had been terminated and was "impossible" to renew. (*E.g.*, CAC ¶¶ 15, 234(a), 239, 249, 252, 254.) ██████████

████████████████████████████████████████████████████████

█████████████████████████. Indeed, Plaintiff's investment advisor testified that:

- ████████████████████████████████████████████████████
  ███████████████████.[32]

- ████████████████████████████████████████████████████████.[33]

---

[32]   *E.g.*, Ex. F, Thompson Dep. 106:12–19 (████████████████████████████
████████████████████████████.

[33]   *Id.* 65:21–66:6 ████████████████████████████████████████████████████
████████████████████████████████); *id.*
77:1–17 (████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████.



- ██████████████████████████████████████;[34] and

- █████████████████████████████████████████
██████████████████████████████████[35]

Plaintiff also claims that the Company's renewal of its media rights agreement for the

Middle East was "material" to investors.  (*E.g.*, CAC ¶ 161.)  But the termination of the OSN

agreement ████████████████████████████████████████████████

████████████████████████████████████.  Plaintiff's

investment advisor testified that:

- ██████████████████████████████████████████
████████████████████████████████████████
████████████████████████████.[36]

- ████████████████████████████████████████
███████████[37] and

---

[34]   *Id.* 82:20–83:1 ████████████████████████████
████████████████████████████████████████
███████████████).

[35]   *Id.* 107:1–8 (███████████████████████████████
████████████████████████████████████████
█████████████████).

[36]   Ex. F, Thompson Dep. 110:9–111:1.

[37]   *Id.* 111:2–14 (██████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████); *see also ECA, Local
134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase & Co.*, 553 F.3d 187, 204 (2d Cir.
2009) ("[A]n alleged misrepresentation relating to less than two percent of defendant's assets,
when taken in context, could be immaterial as a matter of law." (collecting authorities)); *In
re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 422–23 (S.D.N.Y.
2013) ("Where misstatements implicate less than 5% of an entity's revenue, the misstatements
are not likely to be material.").

- [38]

Plaintiff similarly claims that the "timing of WWE's new media rights agreement in the MENA region was critical to investors." (CAC ¶ 161.)  But Plaintiff's investment advisor confirmed that :

- ███████████████████████████████████████████[39] and

- ███████████████████████████████████████████[40].

Plaintiff also alleges the "investors closely watched for news of when the WWE would finalize its media-rights agreement with the Saudi government." (CAC ¶ 171.)  But Plaintiff's investment advisor testified that ███████████████████████████████ ████████████████████████████:

- █████████████████████████████████████████████[41],

---

[38]  Ex. F, Thompson Dep. 147:7–148:16 (████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████; *see also id.* 143:11–23, 146:21–147:3.

[39]  Ex. F, Thompson Dep. 108:8–19 ██████████████████ ████████████████████████████████████████ ████████████████████.

[40]  *Id.* 108:20–109:1 ██████████████████ ████████████████████████████████ ████████.

[41]  Ex. F, Thompson Dep. 139:18–140:10 ████████████ ████████████████████████████████████



The stark dichotomy between Plaintiff's allegations in the CAC and Motion and the testimony of Plaintiff's investment advisor might be attributable to the fact that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[46]  Whatever the reason for this divergence between Plaintiff's allegations and the testimony of its investment advisor (▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), this divergence will be particularly

---

[42]  *Id.* 144:20–145:10.

[43]  *Id.* 145:17–24 (

).

[44]  *Id.* 205:13–207:22

).

[45]  *Id.* 212:7–16 (

.

[46]  *Id.* 16:22–24.

detrimental to a proposed class that will need to prove its claims despite the contrary evidence of its class representative.  Each of these complications on their own would be sufficient to justify denial of Plaintiff's class certification Motion.  Cumulatively, along with the other issues identified above, they weigh heavily against the granting of Plaintiff's Motion.

**III.**   **Plaintiff Is an Inadequate Class Representative**

A proposed class representative must prove that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Representation is "adequate" where the class representatives have (1) an interest in vigorously pursuing the claims of the class and (2) no interests antagonistic to the interests of the other class members.  *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 867 (S.D.N.Y. 2018).  Here, Plaintiff has no claims relating to the "renewal" statements and will collect no damages if these claims succeed or are ascribed value in a settlement.  Plaintiff thus has no financial incentive to vigorously pursue the "renewal" claims or maximize recovery for them.  There is thus an intolerable risk that "[a]lthough all class members share an interest in maximizing the collective recovery," the named plaintiff that does not hold one type of claim will have "no incentive to maximize the recovery" for class members holding that claim.  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011).  Even if Plaintiff assures the Court that it will pursue all claims the class asserts, Plaintiff will inevitably be subject to second-guessing regarding its litigation of the "renewal" claims on which it cannot recover and has no economic incentive to pursue.  The conflict here is starker— and the likelihood of challenges at a potential settlement greater—than in the more common scenario in which a class is certified despite conflicts relating to the time at which particular members purchased their securities and the relative amount of damages they might recover.

Moreover, a class representative is inadequate if its case raises issues that "could become the focus of cross-examination and unique defenses at trial, to the detriment of the class." *Lapin*,

254 F.R.D. at 177 (citation omitted); *see also Gary Plastic*, 903 F.2d at 180.  For this reason, the timing of Plaintiff's purchases, Plaintiff's knowledge of the information that was allegedly misrepresented, and ███████████████████████████████████ additionally render Plaintiff an inadequate representative of the proposed class.  *See George*, 2013 WL 3357170, at *6.

## IV.   Alternatively, the Proposed Class Definition Should Be Narrowed

If the Court nonetheless certifies a class, it must also "define the class," including the appropriate start and end dates.  Fed. R. Civ. P. 23(c)(1)(B).  The Court "has authority *sua sponte* to modify a proposed class definition."  *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019).  Because Plaintiff has no claim with respect to the alleged "renewal" misstatements, the earliest the Class Period can begin is July 25, 2019, when the "agreement in principle" statements were made.  *See Stevelman* v. *Alias Rsch., Inc.*, No. 91 Civ. 682 (EBB), 2000 WL 888385, at *5 (D. Conn. June 22, 2000) ("No class period may commence prior to the earliest date on which plaintiff can properly allege all the elements of his prima facie case.").

The Class should also exclude investors who sold all of their WWE stock prior to October 31, 2019, which, according to Plaintiff, is the first statistically significant corrective disclosure after July 25, 2019.  (CAC ¶ 274; Doc. 87-1 at Ex. 7.)  Investors who sold all WWE stock prior to the first statistically significant corrective disclosure after the Class Period began must be excluded because they are unable to prove loss causation.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act Litig.*, 281 F.R.D. 134, 148 (S.D.N.Y. 2012).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Dated:  November 3, 2020
         New York, New York

                              Respectfully submitted,

                              PAUL, WEISS, RIFKIND, WHARTON
                                & GARRISON LLP

                              By: /s/ Daniel J. Kramer
                                  Theodore V. Wells, Jr.
                                  Daniel J. Kramer
                                  Richard C. Tarlowe
                                  Neil P. Kelly
                                  1285 Avenue of the Americas
                                  New York, New York 10019
                                  (212) 373-3000
                                  twells@paulweiss.com
                                  dkramer@paulweiss.com
                                  rtarlowe@paulweiss.com
                                  nkelly@paulweiss.com

                                  Justin Anderson
                                  Melissa F. Zappala
                                  2001 K Street NW
                                  Washington, DC 20006
                                  (202) 223-7300
                                  janderson@paulweiss.com
                                  mzappala@paulweiss.com

                                  *Counsel for Defendants World Wrestling
                                  Entertainment, Inc., Vincent K. McMahon,
                                  George A. Barrios, and Michelle D. Wilson*