**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. McMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,<br><br>        Defendants. | Case No. 1:20-cv-02031-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**<u>AND PAYMENT OF EXPENSES</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................3

I.     THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE
      PERCENTAGE OR LODESTAR METHOD ...................................................................3

        A.     The Requested Attorneys' Fee Would Be Reasonable Under the
              Percentage-of-the-Fund Method ...............................................................4

        B.     The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar
              Method .......................................................................................................6

II.    THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
      THE SECOND CIRCUIT'S FACTORS ..........................................................................9

        A.     Lead Counsel Has Devoted Significant Time and Labor to the Action ...............10

        B.     The Magnitude and Complexity of the Action Support the Requested Fee ..........10

        C.     The Risks of the Litigation Support the Requested Fee ......................................11

        D.     The Quality of Lead Counsel's Representation Supports the Requested
              Fee...........................................................................................................12

        E.     The Requested Fee in Relation to the Settlement ..................................................15

        F.     Public Policy Considerations Support the Requested Fee .....................................15

III.   THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
      REQUESTED FEE ......................................................................................................16

IV.   THE FEE REQUEST IS SUPPORTED BY LEAD PLAINTIFF ....................................16

V.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................17

VI.   LEAD PLAINTIFF SHOULD BE AWARDED ITS REQUESTED
      REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4) ...................................................19

CONCLUSION.....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'n Corp. Sec. and Derivative Litig.*,
   MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272
   F. App'x. 9 (2d Cir. 2008) ...................................................................................................15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)................................................................................................................3, 4

*In re Bayer AG Sec. Litig.*,
   No. 03-cv-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008)..............................................14

*In re Bristol-Myers Squibb Sec. Litig.*,
   361 F. Supp. 2d 229 (S.D.N.Y. 2005)..................................................................................6, 7

*In re China Sunergy Sec. Litig.*,
   No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............................................17

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   No. 12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015) ..............................5, 6

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)...................................8, 11, 15

*In re Deutsche Telekom, AG Sec. Litig.*
   No. 00-cv-9475, 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...............................................7

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................*passim*

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................................13

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).................................................................................................4, 10

*Hicks v. Morgan Stanley*,
   No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).............................4, 15, 19, 20

ii

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................7, 15

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .....................................................................5, 12

*In re Marsh & McLennan, Co. Sec. Litig.*
    No. 04-8144, WL 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...........................20

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)....................................................................................4

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)...............................................................................................9

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d (E.D. Pa. 2005) ...........................................................................7

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)...............................................................................4, 5

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................................3

*In re Veeco Instruments Inc. Sec. Litig.*,
    MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)....................*passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................4, 6, 7

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)....................................................................7

**Docketed Cases**

*Arkansas Teacher Ret. Sys. and Fresno Cnty. Emps. Ret. Assoc. v. Bankrate Inc.*
    No. 12-cv-7183, slip op. (S.D.N.Y. Nov. 25, 2014) ..............................................5

*In re Celestica Inc. Sec. Litig.*,
    No. 07-cv-00312-GBD, slip op. (S.D.N.Y. July 28, 2015) ......................................6

*Central Laborers' Pension Fund v. Sirva*,
    No. 04 C-7644, slip op. (N.D. Ill. Oct. 31, 2007) ...................................................6

*Cornwell v. Credit Suisse Grp.*,
　　No. 08-cv-03758 (VM), slip op. (S.D.N.Y. July 18, 2011) ........................................7

*In re McLeodUSA Inc. Sec. Litig.*,
　　No. C02-0001-MWB, slip op. (N.D. Iowa Jan. 5, 2007) ...........................................6

*In re NQ Mobile, Inc. Sec. Litig.*,
　　Case No. 1:13-cv-07608-WHP, slip op. (S.D.N.Y. Mar. 11, 2016) .........................5

*In re OSG Sec. Litig.*,
　　No. 12-cv-07948-SAS, slip op. (S.D.N.Y. Dec. 2, 2015) .........................................6

*In re Refco Inc. Sec. Litig.*
　　No. 05-cv-8626, slip op. (S.D.N.Y. Mar. 22, 2011) .................................................5

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
　　No. 07-cv-02830-SHM-dkv, slip op. (W.D. Tenn. Aug. 5, 2013)............................6

*In re Salomon Analyst Metromedia Litig.*,
　　No 02-7966, slip op. (S.D.N.Y. Feb. 27, 2009) ......................................................5

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
　　No. 09-MD-2027, slip op. (S.D.N.Y. Sept. 13, 2011) ...........................................20

*In re Silvercorp Metals, Inc. Sec. Litig.*,
　　No. 12-cv-9456 (JSR), slip op.  (S.D.N.Y. Feb. 13, 2015) .....................................5

*South Ferry LP #2 v. Killinger*,
　　No. C04-1599-JCC, slip op. (W.D. Wash. June 5, 2012).......................................6


**Statutes**

15 U.S.C. §78u-4(a)(4) ...............................................................................................19

Court-appointed Lead Counsel, Labaton Sucharow LLP ("Labaton"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 18% of the Settlement Fund. Lead Counsel also seeks payment of $468,375.08 in litigation expenses that Lead Counsel reasonably incurred in prosecuting the Action, as well as $6,286.40 in reimbursement to Lead Plaintiff Firefighters' Pension System of the City of Kansas City, Missouri Trust ("Lead Plaintiff" or "Kansas City FPS") directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $39 million cash payment pursuant to the terms of the Stipulation. The Settlement brings to a close, with a very favorable result, a year of intense litigation, including motion practice, fact and expert discovery, trial preparation, and robust arm's-length negotiations between counsel. The Settlement will provide meaningful compensation to the Settlement Class while avoiding the delay and significant risks of continued litigation.

The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover less (or nothing) if litigation continued. Defendants had substantial defenses

---

[1] Lead Counsel is simultaneously submitting the Declaration of Carol C. Villegas in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (the "Villegas Declaration") (cited as "¶"). Capitalized terms have the meanings ascribed to them in the Villegas Declaration or the Stipulation and Agreement of Settlement (ECF No. 104-1) (the "Stipulation").

All exhibits referenced below are attached to the Villegas Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the

to liability.   While Lead Plaintiff believes it had compelling counterarguments, there was a substantial risk that Defendants' upcoming motion for summary judgment and *Daubert* challenges might result in the elimination of a significant portion—or even all—of the class's damages.   In addition to challenging loss causation issues, Lead Plaintiff faced ongoing hurdles with respect to its ability to establish the falsity and materiality of the alleged misstatements, as well as the element of scienter.   Finally, if Lead Plaintiff succeeded in establishing both Defendants' liability and loss causation at trial, Defendants likely intended to pursue appeals, which would have further delayed and threatened any recovery.   The Settlement eliminates these risks while providing a very favorable recovery to the Settlement Class.

In the face of these challenges—as well as the fully contingent nature of the case—Lead Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel.   Among the other work detailed in the Declaration, Lead Counsel: (i) conducted a robust international investigation and filed a detailed amended complaint, which involved identifying approximately 293 former WWE employees and other persons with relevant knowledge, contacting 179 of them, and interviewing 71, consulting with an expert concerning loss causation and damages, and reviewing the voluminous public record; (ii) defeated Defendants' motion to dismiss the Complaint; (iii) engaged in extensive and expedited fact discovery, including taking three remote depositions of WWE current employees and preparing for the depositions of additional deponents, including the Individual Defendants, and analyzing more than 1,080,000 pages of documents produced by Defendants and six third parties; (iv) engaged in extensive expert discovery, including retaining professionals with expertise in (a)

---

Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

materiality, loss causation, and damages, (b) insider trading, and (c) the media rights industry and media rights agreements; (v) moved for class certification; (vi) engaged in trial preparation, including retaining and consulting with jury and trial consultants and preparing for remote jury focus groups; and (vii) exchanged mediation submissions and participated in two full-day mediation sessions with the direct involvement of representatives from the Parties and under the auspices of experienced and highly respected mediator from the Judicial Mediation and Arbitration Services ("JAMS"), Robert A. Meyer, Esq (the "Mediator").

Against this backdrop, Lead Counsel requests a fee of 18% of the Settlement Fund, which would represent a reasonable lodestar "multiplier" of approximately 1.5, payment of Lead Counsel's litigation expenses in the amount of $468,375.08, and reimbursement of $6,286.40 to Lead Plaintiff for the time and resources it dedicated to representing the class.  As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class actions of this size, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Lead Counsel respectfully submits that its efforts and the results achieved in this Action justify the requested fees and expenses.

## **ARGUMENT**

## I.    THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC]

action").  Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, No 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).   In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—18% of the Settlement Fund, translating to a lodestar "multiplier" of 1.5 —is well supported under either the "percentage" or "lodestar" method.

### A.     The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained.  The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also*, *Goldberger,* 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in

common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[2]

The 18% fee requested by Lead Counsel is well within the range of percentage fees awarded within the Second Circuit—including by this Court—in comparable class actions achieving significant recoveries.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 07-cv-2237 (JSR), 2008 WL 9019514, at *1-2 (S.D.N.Y. Nov. 25, 2008) (Rakoff, J.) (awarding 25% of $47.5 million settlement); *In re Refco, Inc. Sec. Litig.*, No. 05-cv-8626 (JSR), slip op. at 2 (S.D.N.Y. March 22, 2011) (Rakoff, J.) (awarding 18% of $25.3 million settlement) (Ex. 7);[3] *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276 (S.D.N.Y. 2013) (Rakoff, J.) (awarding 25% of $19.5 million settlement); *Arkansas Teacher Ret. Sys. and Fresno Cnty Emps.' Ret. Assoc. v. Bankrate, Inc.,* No. 12-cv-7183 (JSR), slip op. at 2 (S.D.N.Y. Nov. 25, 2014) (Rakoff, J.) (awarding 25% of $18 million settlement) (Ex. 7); *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456 (JSR), slip. op. at 9 (S.D.N.Y. Feb. 13, 2015) (Rakoff, J.) (awarding 25% of $14 million settlement) (Ex. 7); *see also In re NQ Mobile, Inc. Sec. Litig.*, Case No. 1:13-cv-07608-WHP, slip op. (S.D.N.Y. Mar. 11, 2016) (awarding 30% of a $60.5 million settlement) (Ex. 7); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, 343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018) (awarding 25% of $35 million settlement); *In re Salomon Analyst Metromedia Litig.*, No 02-7966, slip op. at 1 (S.D.N.Y. Feb. 27, 2009) (27% fee of $35 million settlement) (Ex. 7); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (awarding 33.3% of $35 million ERISA class action settlement); *City of Austin Police Ret.*

---

[2] All internal quotations and citations are omitted unless otherwise stated.

*Sys. v. Kinross Gold Corp.*, No. 12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement); *In re Celestica Inc. Sec. Litig.*, No. 07-cv-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million settlement) (Ex. 7); *In re OSG Sec. Litig.*, No. 12-cv-07948-SAS, slip op. at 1 (S.D.N.Y. Dec. 2, 2015) (awarding 30% of $31.6 million) (Ex. 7).[4]

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2011-2020, the median attorneys' fee award for settlements of between $25 million and $100 million was 25%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA 2021), Ex. 6 at 23.

## B.     The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal–Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically,

---

[3] All unreported slip opinions are submitted in a compendium of cases, which is Exhibit 7 to the Villegas Declaration.

[4] The requested 18% fee award also compares favorably to similarly sized or larger securities class action settlements in other federal jurisdictions. *See, e.g., In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-02830-SHM-dkv, slip op. at 21 (W.D. Tenn. Aug. 5, 2013) (awarding 30% of $62 million settlement) (Ex. 7); *South Ferry LP #2 v. Killinger*, No. C04-1599-JCC, slip op. at 9 (W.D. Wash. June 5, 2012) (awarding 29% of $41.5 million settlement) (Ex. 7); *Central Laborers' Pension Fund v. Sirva*, No. 04 C-7644, slip op. at 10 (N.D. Ill. Oct. 31, 2007) (awarding 29.85% of $53.3 million settlement) (Ex. 7); *In re McLeodUSA Inc. Sec. Litig.*, No. C02-0001-MWB, slip op. at 5 (N.D. Iowa Jan. 5, 2007) (awarding 30% of $30 million settlement) (Ex. 7).

courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Lead Counsel spent more than 8,400 hours of attorney and other professional staff time litigating the case from inception through May 10, 2021. *See* Ex. 4-A. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $4,624,292.50. *Id.* The requested fee of 18% of the Settlement Fund therefore represents a multiplier of 1.5 of the total lodestar. This multiplier is comparable to those regularly awarded in securities class actions and other complex class litigation both within and outside of this District. *See, e.g.*, *Monster Worldwide*, 2008 WL 9019514, at *1-2 (awarding multiplier of 1.3); *Bankrate*, No. 12-cv-7183, slip op. at 2 (awarding 1.8 multiplier); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable); *In re Deutsche Telekom*, *AG Sec. Litig.* No. 00-cv-9475, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 25% of $120 million settlement; a 3.96 multiplier); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 4 (S.D.N.Y. July 18, 2011) (awarding fee equal to a 4.7 multiplier) (Ex. 7); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, "well within the range awarded by courts in this Circuit"); *see also In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement; a 6.96 multiplier); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (awarding fee equal to a 4.7 multiplier).

Fees representing multiples above a lodestar are awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No.

02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience and reputation.[5] Lead Counsel's rates here range from $800 to $1,150 for partners, $565 to $800 for of-counsel, $425 to $550 for associates, and $355 to $375 for paralegals. *See* ¶143; Ex. 4-A. The rates for the staff attorneys, who focused on document review and deposition preparation, range from $315 to $435, with an overall blended hourly rate of approximately $392. *Id.* Sample defense firm rates in 2020, gathered by Labaton Sucharow annually from bankruptcy court filings nationwide, often exceeded these rates. ¶143; Ex. 5.

Here, Lead Counsel carefully and efficiently staffed the Action from the beginning, and litigated the case with just two main partners. Other partners were involved, but only at particular stages of the case, such as lead plaintiff appointment and settlement, consistent with their areas of expertise. *See* Ex. 4-A. The result of this deliberate staffing by Lead Counsel was that associates and of counsel with lower hourly rates handled the case on a day-to-day basis, as opposed to more expensive partners. Additionally, the document review attorneys assisting Lead Counsel on this matter are skilled attorneys who made meaningful, substantive contributions,

beyond solely conducting document review, including preparing deposition and mediation materials.  ¶¶46-49; Ex. 2.

Additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms.  However, Lead Counsel will not seek payment for this additional work.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

*       *       *

In sum, Lead Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## II.   THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

[5] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

*Goldberger*, 209 F.3d at 50.   As discussed below, these factors and the analyses above demonstrate that Lead Counsel's requested fee would be reasonable.

### A.   Lead Counsel Has Devoted Significant Time and Labor to the Action

The substantial time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Villegas Declaration, Lead Counsel, among other things:

- conducted a comprehensive international investigation of the claims and potential claims against WWE and the other Defendants, including conducting 71 interviews of potential witnesses (including former WWE employees (¶¶14-17);

- researched and drafted a detailed amended complaint (*Id.*);

- successfully opposed Defendants' motion to dismiss (¶¶18-27);

- engaged in rigorous and expedited fact and expert discovery, which included the analysis of more than one million pages of documents produced by Defendants and six third-parties; consultation with experts in the fields of market efficiency/loss causation/damages, insider trading, the MENA region, and media rights; three fact depositions of WWE executives, and preparing for several more, including of the Individual Defendants; depositions of Lead Plaintiff and its investment manager; one expert deposition, and preparing for several more  (¶¶28, 36-64);

- moved for class certification (¶¶29-33); and

- engaged in extensive settlement negotiations with Defendants' Counsel, including the exchange of mediation submissions and two all-day mediation sessions (¶¶34-35, 100-07).

As noted above and discussed further in the Villegas Declaration, Lead Counsel expended more than 8,400 hours prosecuting this Action with a lodestar value of $4,624,292.50. *See* Ex. 4.   At all times, Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

### B.   The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action support the requested fee. Courts routinely recognize that securities class action litigation is "notably difficult and notoriously uncertain."

*FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)).  This case was no different.

As detailed in the Villegas Declaration, this Action raised particularly thorny questions concerning—among other things—loss causation, falsity, scienter, and materiality within the sphere of international media rights in general, and WWE's agreements and business ventures within the MENA region and with the Saudi Arabian government in particular. Prosecuting the class's claims required skill and perseverance, including the marshalling of extensive expert evidence, within a very aggressive schedule.

Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.

### C.      The Risks of the Litigation Support the Requested Fee

The risks associated with this contingency fee case also support the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

The fact that Lead Plaintiff prevailed with respect to Defendants' motion to dismiss did not guarantee victory.  Lead Plaintiff still faced the substantial burdens of class certification, summary judgment, *Daubert* motions, trial, and likely appeals – a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, in recent years, even securities class actions that survive pleading-stage motions to dismiss have faced increasing risk of failure at class certification, *Daubert* motions, summary judgment, trial, and appeals. According to analyses conducting by NERA Consulting, 2020 saw a new record number of dismissals, "The number of cases dismissed in 2020 also set a new 10-year record with

11

approximately 6% more cases dismissed than in 2018, the second highest year in the period." *See* Ex. 6 at 11.  In 2020, out of 320 cases, 247 were dismissed or 77%. *Id*. at 12.

In this case, while Lead Counsel believes that Lead Plaintiff's claims are strong, substantial risks and challenges remained in connection with certifying the class and proving falsity, materiality, scienter, and loss causation, which could have compromised its ability to succeed at summary judgment and trial and obtain a larger judgment for the class.  The Parties were deeply divided on virtually every issue in the litigation, as detailed in the Villegas Declaration at Section V. and the accompanying Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Brief"), and there was no guarantee Lead Plaintiff's position would prevail.  If Defendants had succeeded on any of their defenses, Lead Plaintiff and the class would have recovered nothing or far less than the Settlement Amount.

In the face of the many uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of a substantial amount of time and expense with no guarantee of compensation.  ¶¶103-38.  Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *Marsh ERISA*, 265 F.R.D. at 148 ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### D.  The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel respectfully submits that the

quality of its representation is best evidenced by the progress of the litigation and the quality of the result achieved. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Furthermore, Lead Counsel is a nationally recognized leader in the field of securities class action litigation and has substantial experience litigating and trying securities class actions in courts throughout the country. ¶¶145-46; Ex. 4-C. The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement sophisticated strategies to overcome myriad obstacles raised by Defendants throughout the litigation.

The result obtained for the Settlement Class in this case is very favorable, particularly when viewed in light of the serious risks of continued litigation. If Lead Plaintiff were able to prevail in all of its arguments, and with every assumption resolved in the class's favor, which was not likely, the Settlement represents a recovery of approximately 7% of the class's *maximum* recoverable damages, which are estimated to be approximately $559.1 million based on all four alleged corrective disclosures and not factoring in any disaggregation. ¶¶5, 66, 92. However, as detailed in the Villegas Declaration, it was likely that non-fraud related information would need to be "disaggregated" from the stock price declines related to the disclosures. Factoring in Lead Plaintiff's expert's analysis of disaggregation, and still assuming Lead Plaintiff prevailed on all its liability arguments for the whole Class Period, a more realistic estimate of aggregate damages would be $215 million and the Settlement represents a recovery of approximately 18% of the class's damages. Leaving aside disaggregation, Defendants advanced additional attacks on loss causation and reliance, creating serious risks that the class's recovery could be reduced well below $215 million, *see* Villegas Decl. ¶¶5, 66, 92-96 and Settlement Brief at §I.E.2., or

eliminated altogether.  *See, e.g., In re Bayer AG Sec. Litig.*, No. 03-cv-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of establishing loss causation [] and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards.").

Since the passage of the PSLRA, courts have regularly approved settlements that recover smaller percentages of damages. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving $40.3 million settlement representing approximately 6.25% of estimated damages and noting was at the "higher end of the range of reasonableness of recovery in class actions securities litigation").  The $39 million Settlement is also greater than the median and average reported settlement amounts in securities class actions in 2020, $13 million and $30 million, respectively (excluding merger objection settlements, settlements for $0 to the class, and settlements of $1 billion or greater).  *See* Ex. 6 at 16.

The quality of Lead Counsel's representation is further demonstrated by the fact that this substantial recovery was obtained after opposing a year of an intense and aggressive defense by highly-skilled attorneys at K&L Gates LLP, Paul Weiss Rifkind Wharton & Garrison LLP, and Day Pitney LLP. Courts recognize that the strength of Lead Counsel's opposition should be considered in assessing its performance.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's

largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

###### E.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3.  As discussed in detail in Section I, *supra*, the requested fee is well within the range of percentage fees that this Court and other courts have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

###### F.    Public Policy Considerations Support the Requested Fee

A strong public policy favors rewarding firms for bringing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").  This factor supports Lead Counsel's fee and expense application.

III.     THE REACTION OF THE SETTLEMENT CLASS TO DATE
         SUPPORTS THE REQUESTED FEE

The reaction of the Settlement Class to date also supports the fee request.  First, through May 5, 2021, the Claims Administrator has mailed 46,925 copies of the Notice to potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 18% of the Settlement Fund and up to $550,000 in expenses.  *See* Declaration of Melissa M. Mejia Regarding: (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice (the "Mailing Declaration" or "Mailing Decl."), dated May 6, 2021, Ex. 3 at ¶8 and Ex. A thereto. While the time to object to the Fee and Expense Application does not expire until May 25, 2021, to date no objections have been received.  Lead Counsel will address any that are submitted in its reply papers, which will be filed on or before June 8, 2021.

IV.     THE FEE REQUEST IS SUPPORTED BY LEAD PLAINTIFF

The requested fee of 18% is made with the full support of the Lead Plaintiff. *See* Declaration of Barbara Davis on Behalf of Firefighters' Pension System of the City of Kansas City, Missouri Trust, dated April 28, 2021, submitted herewith as Ex. 1, at ¶¶1, 9-10.  Kansas City FPS is the type of sophisticated and financially interested investor that Congress envisioned in enacting the PSLRA.  The 18% request is a highly-competitive cap on Lead Counsel's fees, based on negotiations between Lead Counsel and Kansas City FPS at the start of the case, which were memorialized in the Lead Plaintiff's retention agreement with Labaton and which incorporate the stage of the litigation at which the case is settled.  ¶127.  Accordingly, Lead Plaintiff's endorsement of the fee supports its approval. *See Veeco*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . – a

large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request[.]").

## V.      LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of Lead Counsel's litigation expenses, which were reasonably incurred and necessary to prosecute the Action.  As set forth in detail in the Villegas Declaration, Lead Counsel incurred $468,375.08 in litigation expenses.  *See* Ex. 4-B.  This amount is below the $550,000 cap that the Settlement Notice informed potential Settlement Class Members that counsel may apply for, and which—to date—there has been no objection to.

The amount of litigation expenses is consistent with the stage of the litigation. Lead Counsel has incurred considerable expenses related to, among other things, expert and consultant fees, deposition reporting and transcripts, document hosting, and international investigators.  A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit B to the Villegas Declaration.  These expense items are reported separately by Lead Counsel, and such costs are not duplicated in the firm's hourly rates.  It is respectfully submitted that the expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

One of the largest expenses relates to the retention of Lead Plaintiff's testifying and consulting experts.  These fees total $298,075.60, or approximately 64% of the total litigation expenses.   ¶150; Ex. 4-B.   Principally, Lead Plaintiff retained a market efficiency/loss causation/and damages expert, Chad Coffman, of Global Economics Group, who contributed to

the prosecution of this Action by, among other things, preparing an expert report concerning market efficiency; analyzing loss causation and damages issues, including in connection with the Parties' mediation; sitting for a deposition in connection with Lead Plaintiff's class certification motion; consulting on Lead Plaintiff's class certification and upcoming summary judgment arguments; and developing the proposed Plan of Allocation. Lead Counsel also retained: (i) an expert in insider trading, who prepared a draft expert report on the Individual Defendants' trading of WWE stock; (ii) a media rights expert, who was in the process of preparing an expert report about WWE's MENA media rights agreement; (iii) a consulting expert with expertise in the media rights landscape in the MENA region; and (iv) jury and trial consultants. *Id.*

Costs related to discovery comprise a sizable amount of the litigation expenses, totaling $49,438.30, or approximately 11% of all expenses. Ex. 4-B. These costs include $24,964.25 in court reporting fees related to the depositions taken by the Parties, as well as $24,474.05 in litigation support vendor fees to host and review the more than one million pages of documents produced in this litigation, which includes an estimate of approximately four months of ongoing baseline costs.[6] *Id.* Lead Counsel also seeks $74,753.58 (approximately 16% of aggregate expenses) related to the fees of investigative firm Gryphon Strategies, which provided valuable assistance with the identification and interviewing of witnesses located abroad, including in the MENA region. *Id.*

Overall, the expenses sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients who pay by the hour.

---

[6] Although discovery has been paused in light of the Settlement, $1,038.03 in baseline monthly fees continue to be incurred. Given the Settlement Hearing on June 15, 2021, and the lack of objections to date, we estimate that the Settlement may reach its Effective Date in July, at which point the electronic discovery platform can be shut down. ¶155.

**VI.     LEAD PLAINTIFF SHOULD BE AWARDED ITS REQUESTED REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4)**

Lead Counsel also seeks reimbursement of $6,286.40 for Lead Plaintiff, Kansas City FPS, directly related to its representation of the class.  *See* Declaration of Barbara Davis, Ex. 1. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).  Here, as described more fully in Ms. Davis's Declaration, Lead Plaintiff has been committed to pursuing the class's claims—and has taken an active role in so doing.  As just one example, Ms. Davis, Executive Officer of Kansas City FPS, remotely attended the two mediation sessions, during which she actively participated.  Ex. 1 at ¶6.  These efforts required Ms. Davis and other employees of Lead Plaintiff to dedicate time and resources they otherwise would have devoted to their regular duties.

Lead Plaintiff seeks $4,753.00 in connection with the time it spent and $1,533.40 in expenses.  Ms. Davis dedicated at least 65.25 hours to litigation efforts. Her standard rate as Executive Officer increased from $71.61 per hour to $73.04 per hour during the course of the Action, resulting in a cost to Lead Plaintiff of $4,753.00.  *See* Ex. 1 at ¶¶12-13.  Kansas City FPS also seeks reimbursement for the $1,533.40 in fees it paid to its outside fund counsel, Arnold, Newbold, Sollars & Hollins, P.C., in connection with participating in the Action and ensuring that its efforts were consistent with Kansas City FPS's fiduciary and other obligations.  *Id*. at ¶14.

Courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the

first place." *Hicks*, 2005 WL 2757792, at *10.   Numerous cases, including those of this Court, have approved payments to compensate lead plaintiffs.   *See, e.g., Silvercorp Metals,* No. 12-cv-09456, slip op. at 9 (awarding two lead plaintiffs $12,500 each) (Ex. 7); *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 879 (S.D.N.Y. 2018) (awarding institutional lead plaintiffs $300,000, $50,000, and $50,000); *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, No. 09-MD-2027, slip op. at 3-4 (S.D.N.Y. Sept. 13, 2011) (awarding a combined $193,111 to four institutional lead plaintiffs) (Ex. 7); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 772 F.3d 125, 132-134 (2d Cir. 2014) (affirming over $450,000 award to representative plaintiffs for time spent by their employees); *FLAG Telecom*, 2010 WL 4537550, at *31 (award of $100,000 to lead plaintiff for time spent on the litigation); *In re Marsh & McLennan*, *Co. Sec. Litig.*  04 Civ. 8144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding a combined $214,657 to two institutional lead plaintiffs).

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award it attorneys' fees in the amount of 18% of the Settlement Fund, which includes accrued interest; $468,375.08 in litigation expenses incurred by Lead Counsel; and $6,286.40 in reimbursement to Lead Plaintiff.  A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated: May 11, 2021

**LABATON SUCHAROW LLP**

 */s/ Carol C. Villegas*
Carol C. Villegas
Christine M. Fox
Domenico Minerva
Ross M. Kamhi
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700

Facsimile: (212) 818-0477
Emails: cvillegas@labaton.com
        cfox@labaton.com
        dminerva@labaton.com
        rkamhi@labaton.com

*Counsel for Lead Plaintiff Firefighters'*
*Pension System of the City of Kansas City,*
*Missouri Trust and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

<u>/s/ *Carol C. Villegas*</u>
CAROL C. VILLEGAS