# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. McMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,<br><br>　　　　　Defendants. | Civil Action No. 1:20-cv-02031-JSR |

**DECLARATION OF MELISSA M. MEJIA REGARDING: (A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION**

I, Melissa M. Mejia, declare and state as follows:

1.　　I am a Project Manager employed by Epiq Class Action & Claims Solutions, Inc. ("Epiq"). Pursuant to the Court's March 7, 2021, Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date For Hearing on Final Approval of Settlement (the "Preliminary Approval Order"), Epiq was authorized to act as the Claims Administrator in connection with the Settlement of the above-captioned action.[1] The following statements are based on my personal knowledge and information provided by other Epiq employees working under my supervision and, if called on to do so, I could and would testify competently about them.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Stipulation and Agreement of Settlement dated as of December 22, 2020 (ECF No. 104-1) (the "Stipulation").

**DISSEMINATION OF THE NOTICE PACKET**

2.       Pursuant to the Preliminary Approval Order, Epiq mailed the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form") (collectively, the Notice and Claim Form are referred to as the "Notice Packet"), to potential Settlement Class Members.  A copy of the Notice Packet is attached as Exhibit A.

3.       On March 8, 2021, Epiq received an Excel file from Lead Counsel, which Lead Counsel received from counsel for World Wrestling Entertainment, Inc. containing transfer agent records of the names and addresses of 6,883 purchasers of WWE common stock during the Class Period for initial noticing.  Epiq extracted these records from the files and, after data clean-up and de-duplication, there remained 6,875 unique names and addresses.  Epiq formatted the Notice Packet, caused it to be printed and personalized with the name and address of each known potential Settlement Class Member, posted the Notice Packets for first-class mail, postage prepaid, and mailed Notice Packets to these 6,875 potential Settlement Class Members on March 22, 2021.

4.       As in most class actions of this nature, the large majority of potential class members are beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers.  Epiq maintains and updates an internal list of the largest and most common banks, brokers and other nominees.  At the time of the initial mailing, Epiq's internal broker list contained 1,145 mailing records.  On March 22, 2021, Epiq caused Notice Packets to be mailed to the 1,145 mailing records contained in its internal broker list.

5.       In total, 8,020 copies of the Notice Packet were mailed to potential Settlement Class Members and nominees by first-class mail on March 22, 2021.

2

6.      The Notice directed those who purchased or otherwise acquired publicly traded WWE common stock during the Class Period for the beneficial interest of a person or organization other than themselves to either: (i) provide Epiq with the names and addresses of such beneficial owners no later than ten (10) calendar days after such nominees' receipt of the Notice Packet; or (ii) request within ten (10) calendar days of receipt of the Notice Packet, additional copies of the Notice Packet from the Claims Administrator, and send a copy of the Notice Packet to such beneficial owners, no later than ten (10) calendar days after receipt of the copies.

7.      Through May 5, 2021, Epiq has mailed an additional 13,605 Notice Packets to potential members of the Settlement Class whose names and addresses were provided to Epiq by individuals, entities or nominees requesting that Notice Packets be mailed to such persons, and has mailed another 25,300 Notice Packets to nominees who requested Notice Packets to forward to their customers.  Each of the requests was responded to in a timely manner, and Epiq will continue to timely respond to any additional requests received.

8.      As of May 5, 2021 an aggregate of 46,925 Notice Packets have been disseminated to potential Settlement Class Members and their nominees by first-class mail.  In addition, Epiq has re-mailed 57 Notice Packets to persons whose original mailing was returned by the U.S. Postal Service and for whom updated addresses were provided to Epiq by the Postal Service.

**PUBLICATION OF THE SUMMARY NOTICE**

9.      In accordance with paragraph 11 of the Preliminary Approval Order, Epiq caused the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses (the "Summary Notice") to be published once in the national edition of *The Wall Street Journal* and to be transmitted over the *PR Newswire* on April 5, 2021.  Attached as Exhibit B is a Confirmation of Publication attesting to the publication of the Summary Notice in

*The Wall Street Journal* and a screen shot attesting to the transmittal of the Summary Notice over the *PR Newswire*.

## CALL CENTER SERVICES

10.     Epiq reserved a toll-free phone number for the Settlement, (800) 817-4526, which was set forth in the Notice, the Claim Form, the Summary Notice, and on the Settlement website.

11.     The toll-free number connects callers with an Interactive Voice Recording ("IVR"). The IVR provides callers with pre-recorded information, including a brief summary about the Action and the option to request a copy of the Notice and to speak with an operator during business hours.  The toll-free telephone line with pre-recorded information is available 24 hours a day, seven days a week.

12.     Epiq made the IVR available on March 22, 2021, the same date Epiq began mailing the Notice Packets.

## WEBSITE

13.     Epiq established and is maintaining a website dedicated to this Settlement (www.WWESecuritiesSettlement.com) to provide additional information to Settlement Class Members.  Users of the website can download copies of the Notice, the Claim Form, the Stipulation, and the Preliminary Approval Order, among other relevant documents.  The web address was set forth in the Summary Notice, the Notice, and on the Claim Form.  The website was operational beginning on March 22, 2021, and is accessible 24 hours a day, seven days a week. Epiq will continue operating, maintaining and, as appropriate, updating the website until the conclusion of this administration.

**EXCLUSION REQUESTS**

14.     Pursuant to the Preliminary Approval Order, Settlement Class Members who wish to be excluded from the Settlement Class are required to mail their written request to Epiq so that the request is received by May 25, 2021.[2]  This deadline has not yet passed.  As of the date of this Declaration, Epiq has received one request for exclusion.  *See* Exhibit C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 6, 2021, at New York, New York.

_____
*Melissa Mejia*
Melissa M. Mejia

---

[2] Objections are to be filed with the Court and mailed to counsel.  Epiq has not received any misdirected objections.

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CITY OF WARREN POLICE AND FIRE
RETIREMENT SYSTEM, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,

    vs.

WORLD WRESTLING ENTERTAINMENT, INC.,
VINCENT K. McMAHON, GEORGE A. BARRIOS,
and MICHELLE D. WILSON,

        Defendants.

Civil Action No. 1:20-cv-02031-JSR

---

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT,**
**AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

        If you purchased or otherwise acquired the publicly traded common stock of World Wrestling Entertainment, Inc. ("WWE" or the "Company") during the period from February 7, 2019 through February 5, 2020, inclusive, and were damaged thereby, you may be entitled to a payment from a class action settlement.

*A Federal Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

-    This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement of this securities class action, wish to object, or wish to be excluded from the Settlement Class.[1]

-    If approved by the Court, the proposed Settlement will create a $39 million cash fund, plus earned interest, for the benefit of eligible Settlement Class Members after the deduction of Court-approved fees, expenses, and Taxes. This is an average recovery of approximately $0.95 per allegedly damaged share before deductions for awarded attorneys' fees and Litigation Expenses, and $0.77 per allegedly damaged share after deductions for awarded attorneys' fees and Litigation Expenses.

-    The Settlement resolves claims by Court-appointed Lead Plaintiff Firefighters' Pension System of the City of Kansas City, Missouri Trust (the "Lead Plaintiff") that have been asserted on behalf of the Settlement Class (defined below) against WWE, Vincent K. McMahon, George A. Barrios, and Michelle D. Wilson (collectively, "Defendants"). It avoids the costs and risks of continuing the litigation; pays money to eligible investors; and releases the Released Defendant Parties (defined below) from liability.

    **If you are a Settlement Class Member, your legal rights will be affected by this Settlement**
**whether you act or do not act. Please read this Notice carefully.**

---

[1] The terms of the Settlement are in the Stipulation and Agreement of Settlement, dated December 22, 2020 (the "Stipulation"), which can be viewed at www.WWESecuritiesSettlement.com. All capitalized terms not defined in this Notice have the same meanings as defined in the Stipulation.

AC9261 v.04

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY JUNE 10, 2021.** | The only way to get a payment. *See* Question 8 for details. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY MAY 25, 2021.** | Get no payment. This is the only option that, assuming your claim is timely brought, might allow you to ever bring or be part of any other lawsuit against Defendants and/or the other Released Defendant Parties concerning the Released Plaintiff's Claims. *See* Question 10 for details. |
| **OBJECT BY MAY 25, 2021.** | Write to the Court about why you do not like the Settlement, the Plan of Allocation for distributing the proceeds of the Settlement, and/or Lead Counsel's Fee and Expense Application.  If you object, you will still be in the Settlement Class. *See* Question 14 for details. |
| **PARTICIPATE IN A HEARING ON JUNE 15, 2021 AND FILE A NOTICE OF INTENTION TO APPEAR BY MAY 25, 2021.** | Ask to speak in Court at the Settlement Hearing about the Settlement. *See* Question 18 for details. |
| **DO NOTHING.** | Get no payment. Give up rights. Still be bound by the terms of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained below.

- The Court in charge of this case still has to decide whether to approve the proposed Settlement. Payments will be made to all Settlement Class Members who timely submit valid Claim Forms, if the Court approves the Settlement and after any appeals are resolved.

<strong>WHAT THIS NOTICE CONTAINS</strong>

PSLRA Summary of the Notice ...................................................................................................................Page 3
Why did I get this Notice? .........................................................................................................................Page 4
How do I know if I am part of the Settlement Class? ................................................................................Page 4
Are there exceptions to being included?....................................................................................................Page 4
Why is this a class action? ........................................................................................................................Page 5
What is this case about and what has happened so far? .............................................................................Page 5
What are the reasons for the Settlement? ..................................................................................................Page 6
What does the Settlement provide? ...........................................................................................................Page 6
How can I receive a payment? ...................................................................................................................Page 6
What am I giving up to receive a payment and by staying in the
    Settlement Class? ...............................................................................................................................Page 7
How do I exclude myself from the Settlement Class? ...............................................................................Page 8
If I do not exclude myself, can I sue Defendants and the other
    Released Defendant Parties for the same reasons later? ....................................................................Page 8
Do I have a lawyer in this case? ................................................................................................................Page 8
How will the lawyers be paid? ..................................................................................................................Page 9
How do I tell the Court that I do not like something about the
    proposed Settlement? ........................................................................................................................Page 9
What is the difference between objecting and seeking exclusion? ............................................................Page 9
When and where will the Court decide whether to approve
    the Settlement? ..................................................................................................................................Page 10
Do I have to come to the Settlement Hearing? ..........................................................................................Page 10
May I speak at the Settlement Hearing? ....................................................................................................Page 10
What happens if I do nothing at all? ..........................................................................................................Page 10
Are there more details about the Settlement? ............................................................................................Page 11
How will my claim be calculated? .............................................................................................................Page 11
Special notice to securities brokers and nominees. ...................................................................................Page 15

AC9262 v.04

## PSLRA SUMMARY OF THE NOTICE

**Statement of the Settlement Class's Recovery**

1.  Lead Plaintiff has entered into the proposed Settlement with Defendants which, if approved by the Court, will resolve the Action in its entirety. Subject to Court approval, Lead Plaintiff, on behalf of the Settlement Class, has agreed to settle the Action in exchange for a payment of $39,000,000 in cash (the "Settlement Amount"), which will be deposited into an interest-bearing Escrow Account (the "Settlement Fund"). Based on Lead Plaintiff's damages expert's estimate of the number of shares of WWE publicly traded common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate in the Settlement do so, it is estimated that the average recovery, before deduction of any Court-approved fees and expenses, such as attorneys' fees, Litigation Expenses, Taxes, and Notice and Administration Expenses, would be approximately $0.95 per allegedly damaged share.[2] If the Court approves Lead Counsel's Fee and Expense Application (discussed below), the average recovery would be approximately $0.77 per allegedly damaged share. **These average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimates.** A Settlement Class Member's actual recovery will depend on, for example: (i) the number of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when and how many shares of WWE publicly traded common stock the Settlement Class Member purchased or acquired during the Class Period; and (iv) whether and when the Settlement Class Member sold WWE publicly traded common stock. *See* the Plan of Allocation beginning on page 11 for information on the calculation of your Recognized Claim.

**Statement of Potential Outcome of Case if the Action Continued to Be Litigated**

2.  The Parties disagree about both liability and damages and do not agree about the amount of damages that would be recoverable if Lead Plaintiff were to prevail on each claim. The issues that the Parties disagree about include, for example: (i) whether Defendants made any statements or omitted any facts that were materially false or misleading, or otherwise actionable under the federal securities laws; (ii) whether any such statements or omissions were made with the requisite level of intent or recklessness; (iii) the amounts by which the price of WWE publicly traded common stock was allegedly artificially inflated, if at all, during the Class Period; and (iv) the extent to which factors unrelated to the alleged fraud, such as general market, economic, and industry conditions, influenced the trading prices of WWE publicly traded common stock during the Class Period.

3.  Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Action, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Lead Plaintiff and the Settlement Class have suffered any loss attributable to Defendants' actions or omissions.

**Statement of Attorneys' Fees and Expenses Sought**

4.  Lead Counsel will apply to the Court for attorneys' fees from the Settlement Fund in an amount not to exceed 18% of the Settlement Fund, which includes any accrued interest, or $7,020,000, plus accrued interest. Lead Counsel will also apply for payment of Litigation Expenses incurred in prosecuting the Action in an amount not to exceed $550,000, plus accrued interest, which may include an application pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class. If the Court approves Lead Counsel's Fee and Expense Application in full, the average amount of fees and expenses is estimated to be approximately $0.18 per allegedly damaged share of WWE publicly traded common stock. A copy of the Fee and Expense Application will be posted on www.WWESecuritiesSettlement.com after it has been filed with the Court.

**Reasons for the Settlement**

5.  For Lead Plaintiff, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class. This benefit must be compared to the uncertainty of being able to prove the allegations in the Complaint; the risk that the Court may grant some or all of the anticipated summary judgment motions to be filed by Defendants; the uncertainty of a greater recovery after a trial and appeals; and the difficulties and delays inherent in such litigation.

6.  For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burden, expense, uncertainty, and risk of further litigation.

---

[2] An allegedly damaged share might have been traded, and potentially damaged, more than once during the Class Period, and the average recovery indicated above represents the estimated average recovery for each share that allegedly incurred damages.

**Identification of Representatives**

7.     Lead Plaintiff and the Settlement Class are represented by Lead Counsel, Carol C. Villegas, Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

8.     Further information regarding the Action, the Settlement, and this Notice may be obtained by contacting the Claims Administrator: *WWE Securities Litigation*, c/o Epiq, P.O. Box 6389, Portland, OR 97228-6389, (800) 817-4526, www.WWESecuritiesSettlement.com.

**Please Do Not Call the Court with Questions About the Settlement.**

**BASIC INFORMATION**

### 1.     Why did I get this Notice?

9.     The Court authorized that this Notice be sent to you because you or someone in your family may have purchased or otherwise acquired WWE publicly traded common stock during the period from February 7, 2019 through February 5, 2020, inclusive (the "Class Period"). **Receipt of this Notice does not mean that you are a Member of the Settlement Class or that you will be entitled to receive a payment. The Parties do not have access to your individual investment information. If you wish to be eligible for a payment, you are required to submit the Claim Form that is being distributed with this Notice.** *See* **Question 8 below.**

10.     The Court directed that this Notice be sent to Settlement Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.

11.     The Court in charge of the Action is the United States District Court for the Southern District of New York, and the case is known as *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.,* Civil Action No. 1:20-cv-02031-JSR. The Action is assigned to the Honorable Jed. S. Rakoff, United States District Judge.

### 2.     How do I know if I am part of the Settlement Class?

12.     The Court directed, for the purposes of the proposed Settlement, that everyone who fits the following description is a Settlement Class Member and subject to the Settlement unless they are an excluded person (*see* Question 3 below) or take steps to exclude themselves from the Settlement Class (*see* Question 10 below):

> **All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of WWE during the period from February 7, 2019 through February 5, 2020, inclusive, and were damaged thereby.**

13.     If one of your mutual funds purchased WWE publicly traded common stock during the Class Period, that does not make you a Settlement Class Member, although your mutual fund may be. You are a Settlement Class Member only if you individually purchased or acquired WWE publicly traded common stock during the Class Period. Check your investment records or contact your broker to see if you have any eligible purchases or acquisitions. The Parties do not independently have access to your trading information.

### 3.     Are there exceptions to being included?

14.     Yes. There are some individuals and entities who are excluded from the Settlement Class by definition. Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who was an officer or director of WWE during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) WWE's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person. Also excluded from the Settlement Class is anyone who timely and validly seeks exclusion from the Settlement Class in accordance with the procedures described in Question 10 below.

AC9264 v.04

## 4.      Why is this a class action?

15.      In a class action, one or more persons or entities (in this case, Lead Plaintiff), sue on behalf of people and entities who have similar claims. Together, these people and entities are a "class," and each is a "class member." A class action allows one court to resolve, in a single case, many similar claims that, if brought separately by individual people, might be too small economically to litigate. One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt out," from the class. In this Action, the Court has appointed Firefighters' Pension System of the City of Kansas City, Missouri Trust to serve as Lead Plaintiff and has appointed Labaton Sucharow LLP to serve as Lead Counsel.

## 5.      What is this case about and what has happened so far?

16.      WWE is a sports-entertainment company, primarily known for its brand of professional wrestling. In recent years, the Company generated revenue from the production of original content, which it distributed to television providers around the world and on the Company's own streaming network. The Company's growth as a media company was allegedly fueled by the WWE's expansion internationally. In the Action, Lead Plaintiff alleged that Defendants made materially false and misleading statements and omissions with respect to WWE's (i) "renewal" of a media rights agreement in the Middle East and North Africa ("MENA") region with Orbit Showtime Network ("OSN") and (ii) ability to obtain a new media rights agreement with the Saudi government. Lead Plaintiff alleged that such statements were false and misleading because: (i) senior WWE officials have since admitted that the agreement with OSN was terminated early and that renewal of the agreement was not possible, and (ii) WWE and the Middle East Broadcasting Company ("MBC")—owned and controlled by the Saudi government and negotiating on the Saudi government's behalf—were worlds apart in negotiations on the MENA media rights deal, including after the WWE's made statements about an "agreement in principle" in July 2019. Lead Plaintiff further alleged that the price of WWE publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions, and that the price declined when the truth was allegedly revealed through a series of partial revelations.

17.      In March 2020, two related proposed class actions were filed in the United States District Court for the Southern District of New York (the "Court") alleging violations of the federal securities laws. On May 12, 2020 the Court consolidated the related actions into this Action, *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.,* Civil Action No. 1:20-cv-02031-JSR.

18.      On May 22, 2020, the Court appointed Firefighters' Pension System of the City of Kansas City, Missouri Trust as Lead Plaintiff and Labaton Sucharow as Lead Counsel.

19.      On June 8, 2020, Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the "Complaint") asserting claims against WWE, Vince McMahon, Michelle Wilson, and George Barrios under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and against the Individual Defendants under Section 20(a) of the Exchange Act.

20.      On June 26, 2020, Defendants filed a motion to dismiss the Complaint, and on July 14, 2020, Lead Plaintiff filed its memorandum of law in opposition to the motion to dismiss. On July 21, 2020, Defendants filed their reply memorandum of law and, on July 30, 2020, the Court heard oral argument on Defendants' motion to dismiss. On August 6, 2020, the Court denied Defendants' motion to dismiss.

21.      On August 19, 2020, the Court entered the Case Management Plan, with a trial ready date of February 22, 2021. On August 28, 2020, Defendants filed their Answer to the Complaint.

22.      On October 6, 2020, Lead Plaintiff filed its motion for class certification and appointment of class counsel, which was accompanied by a report from Lead Plaintiff's expert on market efficiency and common damages methodologies. On November 3, 2020, Defendants filed their opposition to Lead Plaintiff's motion for class certification and appointment of class counsel.  Briefing on the motion was ongoing when the Parties agreed to settle.

23.      Before agreeing to a settlement, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation of the claims, defenses, and underlying events and transactions that are the subject of the Action, and engaged in extensive fact discovery. This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, WWE earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; (v) declarations provided by WWE to Lead Counsel; and (vi) the applicable law governing the claims and potential defenses. Through its own internal investigation

AC9265 v.04

- 5 -

and the assistance of the investigative firm Gryphon Strategies, Lead Counsel also identified approximately 293 former WWE employees and other persons with relevant knowledge, contacted 179, and interviewed 71 of them (two of whom were cited in the Complaint as confidential witnesses). Lead Counsel also consulted with experts on: (i) damages and loss causation issues; (ii) insider trading; and (iii) sports, entertainment, and media broadcasting. The Parties' formal discovery included, among other things, Lead Counsel's review and analysis of more than 822,000 pages of documents produced by Defendants and more than 258,000 pages of documents produced in connection with third-party discovery; Lead Plaintiff's production of more than 29,900 pages of documents, which included documents produced by Lead Plaintiff's relevant non-party investment manager, Lead Plaintiff's custodian, and Lead Plaintiff's investment consultant; and taking or defending six depositions.

24.     Lead Plaintiff and Defendants engaged Robert A. Meyer of JAMS, a well-respected and experienced mediator, to assist them in exploring a potential negotiated resolution of the Action. On November 17 and 18, 2020, Lead Plaintiff and Defendants participated in a two-day mediation in an attempt to reach a settlement. In advance of the two-day session, the Parties submitted detailed mediation statements to the Mediator, together with numerous supporting exhibits. The Parties reached an agreement to settle the Action at the conclusion of the two-day mediation session, which was memorialized in a Term Sheet executed and finalized on November 18, 2020, subject to the execution of a "customary long-form" stipulation and agreement of settlement and related papers.

| **6.** | **What are the reasons for the Settlement?** |

25.     The Court did not finally decide in favor of Lead Plaintiff or Defendants. Instead, both sides agreed to a settlement. Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit. They recognize, however, the expense and length of continued proceedings needed to pursue the claims through trial and appeals, as well as the difficulties in establishing liability. Assuming the claims proceeded to trial, the Parties would present factual and expert testimony on each of the disputed issues, and there is risk that the Court or jury would resolve these issues unfavorably against Lead Plaintiff and the class. In light of the Settlement and the guaranteed cash recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

26.     Defendants have denied and continue to deny each and every one of the claims alleged by Lead Plaintiff in the Action, including all claims in the Complaint, and specifically deny any wrongdoing and that they have committed any act or omission giving rise to any liability or violation of law. Defendants deny the allegations that they knowingly, or otherwise, made any material misstatements or omissions; that any Member of the Settlement Class has suffered damages; that the prices of WWE's publicly traded common stock were artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that Members of the Settlement Class were harmed by the conduct alleged. Nonetheless, Defendants have concluded that continuation of the Action would be protracted and expensive, and have taken into account the uncertainty and risks inherent in any litigation, especially a complex case like this Action.

<b>THE SETTLEMENT BENEFITS</b>

| **7.** | **What does the Settlement provide?** |

27.     In exchange for the Settlement and the release of the Released Plaintiff's Claims against the Released Defendant Parties (*see* Question 9 below), Defendants have agreed to cause a $39 million cash payment to be made, which, along with any interest earned, will be distributed after deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), to Settlement Class Members who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund.

| **8.** | **How can I receive a payment?** |

28.     To qualify for a payment from the Net Settlement Fund, you must submit a timely and valid Claim Form. A Claim Form is included with this Notice. You may also obtain one from the website dedicated to the Settlement, www.WWESecuritiesSettlement.com, or from Lead Counsel's website, www.labaton.com, or you may submit a claim online at www.WWESecuritiesSettlement.com. You can also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at (800) 817-4526.

29.     Please read the instructions contained in the Claim Form carefully, fill out the Claim Form, include all the documents the form requests, sign it, and mail or submit it to the Claims Administrator so that it is **postmarked or received no later than June 10, 2021.**

AC9266 v.04

## 9.    What am I giving up to receive a payment and by staying in the Settlement Class?

30.    If you are a Settlement Class Member and do not timely and validly exclude yourself from the Settlement Class, you will remain in the Settlement Class, and that means that, upon the "Effective Date" of the Settlement, you will release all "Released Plaintiff's Claims" against the "Released Defendant Parties." All of the Court's orders about the Settlement, whether favorable or unfavorable, will apply to you and legally bind you.

(a)    **"Released Plaintiff's Claims"** mean any and all claims, demands, losses, rights, and causes of action of any nature whatsoever, known or Unknown Claims (defined below), whether arising under federal, state, common, or foreign law, that (a) were asserted in the Action, or (b) could have been asserted in the Action or in any forum, domestic or foreign, that arise out of, are based upon, or relate to in any way to both (i) the purchase, sale, acquisition, or disposition of WWE publicly traded common stock during the Class Period and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to, in the Action. For the avoidance of doubt, Released Plaintiff's Claims do not include: (i) claims relating to the enforcement of the Settlement; or (ii) claims in any present or future shareholder derivative litigation, including, without limitation, *Merholz v. McMahon*, No. 20-cv-00557 (D. Conn.), *Kooi v. McMahon*, No. 20-cv-00743 (D. Conn.), *Nordstrom v. McMahon*, No. 20-cv-00904 (D. Conn.), *Leavy v. World Wrestling, Inc.*, No. 2020-0907 (Del. Ch.); and (iii) any claims of Persons who submit a request for exclusion that is accepted by the Court.

(b)    **"Released Defendant Parties"** mean Defendants, Defendants' Counsel, and each of their respective past or present direct or indirect subsidiaries, parents, affiliates, principals, successors, and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, insurers; the Spouses, members of the Immediate Families, representatives, and heirs of the Individual Defendants, as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their Immediate Family members; any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest, or assigns of Defendants.

(c)    **"Unknown Claims"** mean any and all Released Plaintiff's Claims that Lead Plaintiff or any other Settlement Class Member do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class. With respect to any and all Released Plaintiff's Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Plaintiff's Claims and the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Plaintiff's Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiff's Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

31.    The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal.

32.    Upon the "Effective Date," Defendants will also provide a release of any claims against Lead Plaintiff and the Settlement Class arising out of or related to the institution, prosecution, or settlement of the claims in the Action.

AC9267 v.04

- 7 -

**EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS**

33.     If you want to keep any right you may have to sue or continue to sue Defendants and the other Released Defendant Parties on your own concerning the Released Plaintiff's Claims, then you must take steps to remove yourself from the Settlement Class. This is called excluding yourself or "opting out." **Please note:** If you decide to exclude yourself from the Settlement Class, there is a risk that any lawsuit you may file to pursue claims alleged in the Action may be dismissed, including because the suit is not filed within the applicable time periods required for filing suit. Defendants have the option to terminate the Settlement if a certain amount of Settlement Class Members request exclusion.

| 10. | How do I exclude myself from the Settlement Class? |
|---|---|

34.     To exclude yourself from the Settlement Class, you must mail a signed letter stating that you request to be "excluded from the Settlement Class in *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.,* No. 1:20-cv-02031-JSR (S.D.N.Y.)." You cannot exclude yourself by telephone or email. Each request for exclusion must also: (i) state the name, address, and telephone number of the person or entity requesting exclusion; (ii) state the number of shares of WWE publicly traded common stock the person or entity purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition, and sale; and (iii) be signed by the Person requesting exclusion or an authorized representative.  A request for exclusion must be mailed so that it is **received no later than May 25, 2021** at:

*WWE Securities Litigation*
c/o Epiq
P.O. Box 6389
Portland, OR 97228-6389

35.     This information is needed to determine whether you are a member of the Settlement Class. Your exclusion request must comply with these requirements in order to be valid.

36.     If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund. Also, you cannot object to the Settlement because you will not be a Settlement Class Member, and the Settlement will not affect you. If you submit a valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future.

| 11. | If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same reasons later? |
|---|---|

37.     No.  Unless you properly exclude yourself, you will give up any rights to sue Defendants and the other Released Defendant Parties for any and all Released Plaintiff's Claims. If you have a pending lawsuit against any of the Released Defendant Parties**, speak to your lawyer in that case immediately**. You must exclude yourself from this Settlement Class to continue your own lawsuit.  Remember, the exclusion deadline is **May 25, 2021**.

**THE LAWYERS REPRESENTING YOU**

| 12. | Do I have a lawyer in this case? |
|---|---|

38.     Labaton Sucharow LLP is Lead Counsel in the Action and represents all Settlement Class Members. You will not be separately charged for these lawyers. The Court will determine the amount of attorneys' fees and Litigation Expenses, which will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

AC9268 v.04

## 13.    How will the lawyers be paid?

39.    Lead Counsel has been prosecuting the Action on a contingent basis and has not been paid for any of its work. Lead Counsel will seek an attorneys' fee award of no more than 18% of the Settlement Fund, or $7,020,000, plus accrued interest. Lead Counsel will also seek payment of Litigation Expenses incurred in the prosecution of the Action of no more than $550,000, plus accrued interest, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of the Lead Plaintiff directly related to its representation of the Settlement Class. Any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

### OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION

## 14.    How do I tell the Court that I do not like something about the proposed Settlement?

40.    If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Lead Counsel's Fee and Expense Application. You may write to the Court about why you think the Court should not approve any or all of the Settlement terms or related relief. If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

41.    To object, you must send a signed letter stating that you object to the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application in "*City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.,* No. 1:20-cv-02031-JSR (S.D.N.Y.)." The objection must also: (i) state the name, address, telephone number, and email address of the objector and must be signed by the objector; (ii) contain a statement of the Settlement Class Member's objection or objections and the specific reasons for the objection, including whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and any legal and evidentiary support (including witnesses) the Settlement Class Member wishes to bring to the Court's attention; and (iii) include documents sufficient to show the objector's membership in the Settlement Class, including the number of shares of publicly traded common stock purchased, acquired, and sold during the Class Period as well as the dates and prices of each such purchase, acquisition, and sale. Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application.  Your objection must be filed with the Court **no later than May 25, 2021 and** mailed or delivered to the following counsel so that it is **received no later than May 25, 2021:**

| Court | Lead Counsel | Defendants' Counsel |
|---|---|---|
| **Clerk of the Court** United States District Court Southern District of New York Daniel Patrick Moynihan U.S. Courthouse 500 Pearl Street New York, NY 10007 | **Labaton Sucharow LLP** Carol C. Villegas Esq. 140 Broadway New York, NY 10005 | **Paul, Weiss, Rifkind, Wharton & Garrison LLP** Justin Anderson, Esq. 2001 K Street, NW Washington, D.C. 20006 |

42.    You do not need to attend the Settlement Hearing to have your written objection considered by the Court. However, any Settlement Class Member who has complied with the procedures described in this Question 14 and below in Question 18 may appear at the Settlement Hearing and be heard, to the extent allowed by the Court. An objector may appear in person or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Settlement Hearing.

## 15.    What is the difference between objecting and seeking exclusion?

43.    Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application. You can still recover money from the Settlement. You can object *only* if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

AC9269 v.04

- 9 -

**THE SETTLEMENT HEARING**

| 16. | When and where will the Court decide whether to approve the Settlement? |
|---|---|

44.       The Court will hold the Settlement Hearing on **June 15, 2021 at 4:00 p.m.**, either remotely or in person, in Courtroom 14B at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007.

45.       At this hearing, the Honorable Jed S. Rakoff will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be approved; (ii) the Plan of Allocation is fair and reasonable, and should be approved; and (iii) the application of Lead Counsel for an award of attorneys' fees and payment of Litigation Expenses is reasonable and should be approved. The Court will take into consideration any written objections filed in accordance with the instructions in Question 14 above. We do not know how long it will take the Court to make these decisions.

46.       The Court may change the date and time of the Settlement Hearing, or hold the hearing remotely, without another individual notice being sent to Settlement Class Members. If you want to attend the hearing, you should check with Lead Counsel beforehand to be sure that the date and/or time has not changed, or periodically check the Settlement website at www.WWESecuritiesSettlement.com to see if the Settlement Hearing stays as scheduled or is changed.

| 17. | Do I have to come to the Settlement Hearing? |
|---|---|

47.       No. Lead Counsel will answer any questions the Court may have, but, you are welcome to attend at your own expense. If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it. You may have your own lawyer attend (at your own expense), but it is not required. If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 18 below **no later than May 25, 2021.**

| 18. | May I speak at the Settlement Hearing? |
|---|---|

48.       You may ask the Court for permission to speak at the Settlement Hearing. To do so, you must, **no later than May 25, 2021**, submit a statement that you, or your attorney, intend to appear in "*City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.*, No. 1:20-cv-02031-JSR (S.D.N.Y.)." If you intend to present evidence at the Settlement Hearing, you must also include in your objections (prepared and submitted according to the answer to Question 14 above) the identities of any witnesses you may wish to call to testify and any exhibits you intend to introduce into evidence at the Settlement Hearing. You may not speak at the Settlement Hearing if you exclude yourself from the Settlement Class or if you have not provided written notice of your intention to speak at the Settlement Hearing in accordance with the procedures described in this Question 18 and Question 14 above.

**IF YOU DO NOTHING**

| 19. | What happens if I do nothing at all? |
|---|---|

49.       If you do nothing and you are a member of the Settlement Class, you will receive no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Plaintiff's Claims. To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above). To start, continue, or be a part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Plaintiff's Claims, you must exclude yourself from the Settlement Class (*see* Question 10 above).

AC92610 v.04

**GETTING MORE INFORMATION**

| | |
|---|---|
| **20.** | **Are there more details about the Settlement?** |

50.    This Notice summarizes the proposed Settlement. More details are contained in the Stipulation. You may review the Stipulation filed with the Court or other documents in the case during business hours at the Office of the Clerk of the United States District Court, Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. (Please check the Court's website, www.nysd.uscourts.gov, for information about Court closures before visiting.) Subscribers to PACER, a fee-based service, can also view the papers filed publicly in the Action through the Court's online Case Management/Electronic Case Files System at https://www.pacer.gov.

51.    You can also get a copy of the Stipulation, and other documents related to the Settlement, as well as additional information about the Settlement by visiting the website dedicated to the Settlement, www.WWESecuritiesSettlement.com, or the website of Lead Counsel, www.labaton.com. You may also call the Claims Administrator toll free at (800) 817-4526 or write to the Claims Administrator at *WWE Securities Litigation*, c/o Epiq, P.O. Box 6389, Portland, OR 97228-6389. **Please do not call the Court with questions about the Settlement.**

**PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND**

| | |
|---|---|
| **21.** | **How will my claim be calculated?** |

52.    The Plan of Allocation set forth below is the plan for calculating claims and distributing the proceeds of the Settlement that is being proposed by Lead Plaintiff and Lead Counsel to the Court for approval. The Court may approve this Plan of Allocation or modify it without additional notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted on the Settlement website at www.WWESecuritiesSettlement.com and at www.labaton.com.

53.    As noted above, the Settlement Amount and the interest it earns is the Settlement Fund. The Settlement Fund, after deduction of Court-approved attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court is the Net Settlement Fund. The Net Settlement Fund will be distributed to members of the Settlement Class who timely submit valid Claim Forms that show a "Recognized Claim" according to the proposed Plan of Allocation (or any other plan of allocation approved by the Court). Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will still be bound by the Settlement.

54.    The objective of this Plan of Allocation is to distribute the Net Settlement Fund among claimants who allegedly suffered economic losses as a result of the alleged wrongdoing. To design this Plan, Lead Counsel conferred with Lead Plaintiff's damages expert. This Plan is intended to be generally consistent with an assessment of, among other things, the damages that Lead Plaintiff and Lead Counsel believe were recoverable in the Action. The Plan of Allocation, however, is not a formal damages analysis and the calculations made pursuant to the Plan are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. The calculations pursuant to the Plan of Allocation are also not estimates of the amounts that will be paid to Authorized Claimants. An individual Settlement Class Member's recovery will depend on, for example: (i) the total number and value of claims submitted; (ii) when the claimant purchased or acquired WWE publicly traded common stock; and (iii) whether and when the claimant sold his, her, or its shares of WWE publicly traded common stock. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim."

55.    For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of the securities at issue. In this case, Lead Plaintiff alleges that Defendants issued false statements and omitted material facts during the Class Period, which allegedly artificially inflated the price of WWE publicly traded common stock. It is alleged that corrective information released to the market on April 25, 2019 (prior to market open), October 31, 2019 (prior to market open), January 30, 2020 (after market close), and February 6, 2020 (prior to market open), impacted the market price of WWE publicly traded common stock on April 25, 2019, October 31, 2019, January 31, 2020, and February 6, 2020, in a statistically significant manner and removed the alleged artificial inflation from the share price on those days after the release of the allegedly corrective information. Accordingly, in order to have a compensable loss in this Settlement, the shares of WWE publicly traded common stock must have been purchased or otherwise acquired during the Class Period and held through at least one of the alleged corrective disclosure dates listed above.

AC92611 v.04

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

56.     For purposes of determining whether a claimant has a "Recognized Claim," if a Settlement Class Member has more than one purchase/acquisition or sale of WWE publicly traded common stock during the Class Period, all purchases/acquisitions and sales will be matched on a "First In, First Out" ("FIFO") basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

57.     A "Recognized Loss Amount" will be calculated for each purchase of WWE publicly traded common stock during the Class Period from February 7, 2019 through February 5, 2020 that is listed in the Claim Form and for which adequate documentation is provided. To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number, that number will be set to zero.

58.     For each share of WWE publicly traded common stock purchased or otherwise acquired during the Class Period and sold before the close of trading on May 5, 2020, an "Out of Pocket Loss" will be calculated. Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

59.     **For each share of WWE publicly traded common stock purchased or acquired from February 7, 2019 through and including February 5, 2020, and:**

A.  Sold before the opening of trading on April 25, 2019, the Recognized Loss Amount for each such share shall be zero.

B.  Sold after the opening of trading on April 25, 2019 through the close of trading on February 5, 2020, the Recognized Loss Amount for each such share shall be *the lesser of*:

1.  the dollar amount of artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below _minus_ the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or

2.  the Out of Pocket Loss.

C.  Sold after the close of trading on February 5, 2020 and before the close of trading on May 5, 2020, the Recognized Loss Amount for each such share shall be *the least of*:

1.  the dollar amount of artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2.  the actual purchase/acquisition price of each such share _minus_ the average closing price from February 6, 2020, up to the date of sale as set forth in **Table 2** below; or

3.  the Out of Pocket Loss.

D.  Held as of the close of trading on May 5, 2020, the Recognized Loss Amount for each such share shall be *the lesser of*:

1.  the dollar amount of artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or

2.  the actual purchase/acquisition price of each such share _minus_ $40.61.[3]

---

[3] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of WWE publicly traded common stock during the "90-day look-back period" of February 6, 2020 through May 5, 2020. The mean (average) closing price for WWE publicly traded common stock during this 90-day look-back period was $40.61.

AC92612 v.04

**TABLE 1**

**WWE Publicly Traded Common Stock Artificial Inflation
for Purposes of Calculating Purchase and Sale Inflation**

| Transaction Date | Artificial Inflation per Share |
|---|---|
| February 7, 2019–April 24, 2019 | $6.02 |
| April 25, 2019–July 24, 2019 | $5.89 |
| July 25, 2019–October 30, 2019 | $11.17 |
| October 31, 2019–January 30, 2020 | $7.44 |
| January 31, 2020–February 5, 2020 | $1.41 |

**TABLE 2**

**WWE Publicly Traded Common Stock Closing Price and Average Closing Price
February 6, 2020–May 5, 2020**

| Date | Closing Price | Average Closing Price Between February 6, 2020 and Date Shown | Date | Closing Price | Average Closing Price Between February 6, 2020 and Date Shown |
|---|---|---|---|---|---|
| 2/6/2020 | $44.50 | $44.50 | 3/23/2020 | $37.72 | $42.27 |
| 2/7/2020 | $42.53 | $43.52 | 3/24/2020 | $39.04 | $42.17 |
| 2/10/2020 | $42.05 | $43.03 | 3/25/2020 | $34.38 | $41.94 |
| 2/11/2020 | $42.74 | $42.96 | 3/26/2020 | $34.95 | $41.74 |
| 2/12/2020 | $42.24 | $42.81 | 3/27/2020 | $33.80 | $41.52 |
| 2/13/2020 | $43.76 | $42.97 | 3/30/2020 | $33.44 | $41.30 |
| 2/14/2020 | $44.93 | $43.25 | 3/31/2020 | $33.93 | $41.11 |
| 2/18/2020 | $45.96 | $43.59 | 4/1/2020 | $33.60 | $40.92 |
| 2/19/2020 | $46.52 | $43.91 | 4/2/2020 | $34.65 | $40.76 |
| 2/20/2020 | $47.74 | $44.30 | 4/3/2020 | $34.13 | $40.60 |
| 2/21/2020 | $50.23 | $44.84 | 4/6/2020 | $35.08 | $40.47 |
| 2/24/2020 | $48.73 | $45.16 | 4/7/2020 | $35.93 | $40.36 |
| 2/25/2020 | $48.81 | $45.44 | 4/8/2020 | $36.27 | $40.27 |
| 2/26/2020 | $48.41 | $45.65 | 4/9/2020 | $37.42 | $40.21 |
| 2/27/2020 | $45.86 | $45.67 | 4/13/2020 | $37.46 | $40.15 |
| 2/28/2020 | $46.77 | $45.74 | 4/14/2020 | $38.37 | $40.11 |
| 3/2/2020 | $46.36 | $45.77 | 4/15/2020 | $38.90 | $40.08 |
| 3/3/2020 | $45.20 | $45.74 | 4/16/2020 | $39.67 | $40.07 |
| 3/4/2020 | $44.98 | $45.70 | 4/17/2020 | $40.54 | $40.08 |
| 3/5/2020 | $44.91 | $45.66 | 4/20/2020 | $40.57 | $40.09 |
| 3/6/2020 | $42.70 | $45.52 | 4/21/2020 | $39.53 | $40.08 |
| 3/9/2020 | $41.16 | $45.32 | 4/22/2020 | $39.48 | $40.07 |
| 3/10/2020 | $41.19 | $45.14 | 4/23/2020 | $39.07 | $40.05 |
| 3/11/2020 | $38.72 | $44.88 | 4/24/2020 | $44.79 | $40.14 |
| 3/12/2020 | $32.38 | $44.38 | 4/27/2020 | $44.08 | $40.21 |
| 3/13/2020 | $35.86 | $44.05 | 4/28/2020 | $44.37 | $40.28 |
| 3/16/2020 | $30.44 | $43.54 | 4/29/2020 | $45.18 | $40.37 |
| 3/17/2020 | $32.75 | $43.16 | 4/30/2020 | $44.47 | $40.44 |
| 3/18/2020 | $33.94 | $42.84 | 5/1/2020 | $43.92 | $40.49 |
| 3/19/2020 | $36.03 | $42.61 | 5/4/2020 | $44.00 | $40.55 |
| 3/20/2020 | $36.50 | $42.42 | 5/5/2020 | $44.31 | $40.61 |

**ADDITIONAL PROVISIONS OF THE PLAN OF ALLOCATION**

60.     The sum of a claimant's Recognized Loss Amounts will be the claimant's "Recognized Claim."

61.     If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

62.     Purchases or acquisitions and sales of WWE publicly traded common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" or "sale" date. The receipt or grant of shares of WWE publicly traded common stock by gift, inheritance, or operation of law during the Class Period will not be deemed an eligible purchase, acquisition, or sale of these shares of WWE publicly traded common stock for the calculation of a claimant's Recognized Claim, nor will the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such shares of such WWE publicly traded common stock unless: (i) the donor or decedent purchased or acquired such shares of WWE publicly traded common stock during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of WWE publicly traded common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

63.     In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero.

64.     In the event that a claimant has an opening short position in WWE publicly traded common stock at the start of the Class Period, the earliest Class Period purchases or acquisitions will be matched against such opening short position in accordance with the FIFO matching described above and any portion of such purchase or acquisition that covers such short sales will not be entitled to recovery. In the event that a claimant newly establishes a short position during the Class Period, the earliest subsequent Class Period purchase or acquisition will be matched against such short position on a FIFO basis and will not be entitled to a recovery.

65.     WWE publicly traded common stock is the only security eligible for recovery under the Plan of Allocation. With respect to WWE publicly traded common stock purchased or sold through the exercise of an option, the purchase/sale date of the WWE publicly traded common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

66.     The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant.

67.     Distributions will be made to eligible Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator will, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after redistribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a private, nonprofit, nonsectarian 501(c)(3) organization approved by the Court upon motion by Lead Plaintiff. Before Lead Plaintiff moves to distribute any unclaimed funds, Lead Counsel will confer with Paul Weiss and will recommend to the Court an organization that is acceptable to Lead Plaintiff and WWE.

68.     Payment pursuant to the Plan of Allocation or such other plan of allocation as may be approved by the Court will be conclusive against all claimants. No person will have any claim against Lead Plaintiff, Lead Counsel, their damages expert, the Claims Administrator, or other agent designated by Lead Counsel, arising from determinations or distributions to claimants made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further orders of the Court. Lead Plaintiff, Defendants, Defendants' Counsel, and all other Released Parties will have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Claim Form or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund or any losses incurred in connection therewith.

AC92614 v.04

69.    Each claimant is deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her, or its claim.

## SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES

70.    If you purchased or acquired WWE publicly traded common stock (ISIN: US98156Q1085) during the Class Period for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN TEN (10) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE, YOU MUST EITHER**: (a) provide a list of the names and addresses of all such beneficial owners to the Claims Administrator and the Claims Administrator is ordered to send the Notice promptly to such identified beneficial owners; or (b) request additional copies of this Notice and the Claim Form from the Claims Administrator, which will be provided to you free of charge, and **WITHIN TEN (10) CALENDAR DAYS** of receipt, mail the Notice and Claim Form directly to all the beneficial owners of those securities. If you choose to follow procedure (b), the Court has also directed that, upon making that mailing, **YOU MUST SEND A STATEMENT** to the Claims Administrator confirming that the mailing was made as directed and keep a record of the names and mailing addresses used. Nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available. You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid upon request and submission of appropriate supporting documentation and timely compliance with the above directives. All communications concerning the foregoing should be addressed to the Claims Administrator:

*WWE Securities Litigation*
c/o Epiq
P.O. Box 6389
Portland, OR 97228-6389
Info@WWESecuritiesSettlement.com
www.WWESecuritiesSettlement.com
(800) 817-4526

Dated: March 22, 2021

BY ORDER OF THE UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AC92615 v.04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF WARREN POLICE AND FIRE
RETIREMENT SYSTEM, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,

    vs.

WORLD WRESTLING ENTERTAINMENT, INC.,
VINCENT K. McMAHON, GEORGE A. BARRIOS,
and MICHELLE D. WILSON,

        Defendants.

Civil Action No. 1:20-cv-02031-JSR

## PROOF OF CLAIM AND RELEASE FORM

**I.     GENERAL INSTRUCTIONS**

1.     To recover as a member of the Settlement Class based on your claims in the action entitled *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.*, Civil Action No. 1:20-cv-02031-JSR (S.D.N.Y.) (the "Action"), you must complete and, on page 5 below, sign this Proof of Claim and Release Form ("Claim Form"). If you fail to submit a timely and properly addressed (as explained in paragraph 3 below) Claim Form, your claim may be rejected, and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement. Submission of this Claim Form, however, does not assure that you will share in the proceeds of the Settlement of the Action.

2.     **THIS CLAIM FORM MUST BE SUBMITTED ONLINE AT WWW.WWESECURITIESSETTLEMENT.COM NO LATER THAN JUNE 10, 2021 OR, IF MAILED, BE POSTMARKED NO LATER THAN JUNE 10, 2021, ADDRESSED AS FOLLOWS:**

*WWE Securities Litigation*
c/o Epiq
P.O. Box 6389
Portland, OR 97228-6389
www.WWESecuritiesSettlement.com

3.     If you are a member of the Settlement Class and you do not timely request exclusion in response to the Notice dated March 22, 2021, you are bound by and subject to the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT.

**II.    CLAIMANT IDENTIFICATION**

4.     If you purchased or otherwise acquired shares of World Wrestling Entertainment, Inc. ("WWE") publicly traded common stock during the period from February 7, 2019 through February 5, 2020, inclusive (the "Class Period") and held the stock in your name, you are the beneficial owner as well as the record owner. If, however, you purchased or otherwise acquired WWE publicly traded common stock during the Class Period through a third party, such as a brokerage firm, you are the beneficial owner and the third party is the record owner.

5.     Use **Part I** of this form entitled "Claimant Identification" to identify each beneficial owner of WWE publicly traded common stock that forms the basis of this claim, as well as the owner of record if different. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL OWNERS OR THE LEGAL REPRESENTATIVE OF SUCH OWNERS.

6.     All joint owners must sign this Claim Form. Executors, administrators, guardians, conservators, and trustees must complete and sign this Claim Form on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.    IDENTIFICATION OF TRANSACTIONS

7.    Use **Part II** of this form entitled "Schedule of Transactions in WWE Publicly Traded Common Stock" to supply all required details of your transaction(s) in WWE publicly traded common stock. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

8.    On the schedules, provide all of the requested information with respect to your holdings, purchases/acquisitions, and sales of WWE publicly traded common stock, whether the transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

9.    The date of covering a "short sale" is deemed to be the date of purchase of WWE publicly traded common stock. The date of a "short sale" is deemed to be the date of sale.

10.    Copies of broker confirmations or other documentation of your transactions must be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim. **THE PARTIES DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN WWE PUBLICLY TRADED COMMON STOCK.**

11.    NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. (This is different than the online claim portal on the Settlement website.) All such claimants MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies. If you wish to submit your claim electronically, you must contact the Claims Administrator at (800) 817-4526 to obtain the required file layout. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

## PART I – CLAIMANT IDENTIFICATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's First Name     MI     Beneficial Owner's Last Name

Co-Beneficial Owner's First Name     MI     Co-Beneficial Owner's Last Name

Entity Name (if claimant is not an individual)

Representative or Custodian Name (if different from Beneficial Owner[s] listed above)

Address 1 (street name and number)

Address 2 (apartment, unit, or box number)

City     State     ZIP/Postal Code

Foreign Country (only if not USA)

Social Security Number (last four digits only)     OR     Taxpayer Identification Number (last four digits only)

Telephone Number (home)     Telephone Number (work)

Email Address

Account Number (if filing for multiple accounts, file a separate Claim Form for each account)

Claimant Account Type (check appropriate box):

☐ Individual (includes joint owner accounts)     ☐ Pension Plan     ☐ Trust

☐ Corporation     ☐ Estate

☐ IRA/401(k)     ☐ Other _____ (please specify)

03-CA40046977
AC9273 v.03

3

## PART II: SCHEDULE OF TRANSACTIONS IN WWE PUBLICLY TRADED COMMON STOCK

**1.   BEGINNING HOLDINGS** – State the total number of shares of common stock held as of the opening of trading on February 7, 2019.  If none, write "0" or "Zero." (Must submit documentation.) _____

**2.   PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list each and every purchase/acquisition of common stock from after the opening of trading on February 7, 2019 through and including the close of trading on February 5, 2020. (Must submit documentation.)

| Date of Purchase (List Chronologically) (MM/DD/YY) | Number of Shares Purchased | Purchase Price per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**3.   PURCHASES/ACQUISITIONS DURING 90-DAY LOOKBACK PERIOD** – State the total number of shares of common stock purchased/acquired from after the opening of trading on February 6, 2020 through and including the close of trading on May 5, 2020.[1] (Must submit documentation.) _____

**4.   SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale/disposition of common stock from after the opening of trading on February 7, 2019 through and including the close of trading on May 5, 2020. (Must submit documentation.)

| Date of Sale (List Chronologically) (MM/DD/YY) | Number of Shares Sold | Sale Price per Share | Total Sale Price (excluding taxes, commissions and fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**5.   ENDING HOLDINGS** – State the total number of shares of common stock held as of the close of trading on May 5, 2020. If none, write "0" or "Zero." (Must submit documentation.) _____

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX :** ☐

---

[1] Information requested in this Claim Form with respect to your transactions after the opening of trading on February 6, 2020 through and including the close of trading on May 5, 2020, is needed only in order for the Claims Administrator to confirm that you have reported all relevant transactions. Purchases during this period, however, are not eligible under the Settlement because these purchases/acquisitions are outside the Class Period and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

**IV.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS**

12.    By signing and submitting this Claim Form, the claimant(s) or the person(s) acting on behalf of the claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation of Net Settlement Fund described in the accompanying Notice. I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York (the "Court") with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth herein. I (We) further acknowledge that I (we) will be bound by and subject to the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth therein.  I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in eligible publicly traded WWE common stock, if required to do so. I (We) have not submitted any other claim covering the same transactions in publicly traded WWE common stock during the Class Period and know of no other person having done so on my (our) behalf.

**V.    RELEASES, WARRANTIES, AND CERTIFICATION**

13.    I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the Notice, that I am (we are) not excluded from the Settlement Class, and that I am (we are) not one of the "Released Defendant Parties" as defined in the accompanying Notice.

14.    As a Settlement Class Member, I (we) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, and discharge with prejudice the Released Plaintiff's Claims as to each and all of the Released Defendant Parties (as these terms are defined in the accompanying Notice). This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

15.    I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

16.    I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions, and sales of publicly traded WWE common stock that occurred during the Class Period and the number of securities held by me (us), to the extent requested.

17.    I (We) certify that I am (we are) NOT subject to backup tax withholding. (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, 2021

| | | |
|---|---|---|
| Signature of Claimant | | Type or print name of Claimant |
| Signature of Joint Claimant, if any | | Type or print name of Joint Claimant |
| Signature of person signing on behalf of Claimant | | Type or print name of person signing on behalf of Claimant |

Capacity of person signing on behalf of Claimant, if other than an individual (e.g., Administrator, Executor, Trustee, President, Custodian, Power of Attorney)

**REMINDER CHECKLIST:**

1. Please sign this Claim Form.

2. DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.

3. Attach only copies of supporting documentation, as these documents will not be returned to you.

4. Keep a copy of your Claim Form for your records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. **Your claim is not deemed submitted until you receive an acknowledgment postcard.** If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll-free at (800) 817-4526.

6. If you move after submitting this Claim Form, please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.

# EXHIBIT B

# CONFIRMATION OF PUBLICATION

**IN THE MATTER OF:** *WWE Securities Settlement*

I, Kathleen Komraus, hereby certify that

(a) I am the Media & Design Manager at Epiq Class Action & Claims Solutions, a noticing administrator, and;

(b) The Notice of which the annexed is a copy was published in the following publications on the following dates:

*4.5.2021 – Wall Street Journal*
*4.5.2021 – PR Newswire*

x *Kathleen Komraus*
**(Signature)**

Media & Design Manager
**(Title)**

P2JW095000-0-B00600-1-------XA

B6 | Monday, April 5, 2021

**THE WALL STREET JOURNAL.**

## BUSINESS & FINANCE

# Greensill-Gupta Tie Had Raised Concerns

By Alistair MacDonald
And Duncan Mavin

The business empires of metals magnate Sanjeev Gupta and financier Lex Greensill leaned on each other to fuel their growth. But for years executives and advisers close to both entrepreneurs urged the two men to decouple their businesses, according to people familiar with the matter.

They failed to do so. Now Mr. Greensill's firm, **Greensill Capital**, is insolvent, and Mr. Gupta's conglomerate, **GFG Alliance**, is scrambling to survive.

Greensill's implosion has ensnared a raft of financial firms, including **Credit Suisse Group AG**, which froze $10 billion of funds it manages with the firm. Regulators have taken over supervision of Greensill's German bank after they said a special audit found suspicious accounting related to Mr. Gupta. The move came despite a last-ditch attempt by **SoftBank Group** Corp., Greensill's largest external investor, to intervene directly with the regulator.

For GFG Alliance, which houses the Gupta family's steel, aluminum and energy businesses and generates annual revenue of $20 billion, its main source of funding suddenly dried up.

Mr. Greensill set up Greensill Capital in 2011 to provide clients with supply-chain finance—a form of short-term lending to help companies pay their suppliers on time.

Mr. Gupta—formerly in commodities trading—entered the steel business in 2013 hoping to revive unloved industrial assets. He found an industry in constant need of working capital, where suppliers and customers often pay late and traditional lenders steer clear.

"When I started my journey back in 2013, there was [sic] few options available in terms of traditional finance...Greensill came as a breath of fresh air," Mr. Gupta said in a podcast aimed at GFG staff that was published last Saturday. GFG says it is seeking alternative



Lex Greensill's firm is insolvent and Sanjeev Gupta's is struggling.

sources of funding and that its companies are performing well amid strong markets for steel and other products.

Messrs. Greensill and Gupta, the latter through GFG, declined to comment for this article.

Mr. Gupta, the son of an Indian industrialist with ambitions to make steel in a more environmentally friendly way, is charismatic, charming and would sometimes invite his staff to family dinners, people who know him said. Mr. Greensill, who grew up on a farm in Australia, is a more staid figure but also an ambitious, aggressive risk taker, people who have worked with him said.

People familiar with the pair's relationship said Mr. Greensill often visited Mr. Gupta to talk business at his large glass-walled office overlooking Sydney Harbour, while the banker invited the industrialist to his family farm, where they would discuss deals on a hill overlooking the estate.

Greensill executives attended big parties Mr. Gupta threw at his rented mansion in an expensive part of Sydney, some of the people said.

In August 2016, Mr. Gupta bought a stake in Greensill, before selling it back later that year.

That year, Mr. Gupta also embarked on his most ambitious deal yet, buying an aluminum smelter and its hydroelectric power supplier in Scotland.

The £330 million deal, equivalent to $454.8 million, was one of several major GFG transactions funded by loans from Greensill. By 2017, GFG accounted for 69% of the lender's revenue, according to an internal memo from Softbank's Vision Fund, reviewed by The Wall Street Journal.

In a phone call with SoftBank, Mr. Gupta explained that while traditional lenders were cheaper, Greensill was faster and more flexible, according to a summary of that conversation contained in the memo.

Increasingly, GFG executives and advisers were concerned about the reliance on Greensill. By 2018 they persuaded Mr. Gupta to consolidate his holdings into one group, release a single set of financials, bring in long-term debt from banks and eventually go public, according to people familiar with the matter.

But the following year GFG made its biggest acquisition yet, paying 740 million euros, equivalent to $868.1 million, for seven European assets from steel giant ArcelorMittal PLC.

GFG held talks with U.S. investment bank Jefferies over a potential bond sale to help fund the deal but dropped the idea when Mr. Gupta balked at some of the terms, the people said.

In general, he didn't like covenants, which often come with loans and bonds and impose conditions on a borrower. In particular, Mr. Gupta railed against conditions that prevented him from moving money around his empire, one of the people said.

GFG moved tens of millions of dollars, for instance, from its profitable Australian businesses to less lucrative British ones and to help fund the 2017 takeover of a steel mill in South Carolina, people familiar with the matter said.

In the end, the acquisition of ArcelorMittal's assets was mainly financed by Greensill, the people added. Jefferies declined to comment.

A spokesman for GFG said

it has over time used a range of financing tools, including bonds, bank loans and asset-based financing.

Mr. Gupta has previously said he wanted to list his Australian and U.S. assets. However, bankers at JPMorgan Chase & Co., who were set to help list the Australian assets, told Mr. Gupta he first needed to reduce his reliance on short-term finance, a person familiar with the matter said.

JPMorgan declined to comment. GFG hasn't listed any business.

As of September 2019, Greensill was lending around $7.4 billion to Mr. Gupta's companies, a Greensill document shows. That month, Mr. Greensill told the Journal in an interview that he was a "big fan" of Mr. Gupta and his attempts to revive industry in the West.

At the same time Greensill's senior management were receiving regular updates on the firm's GFG exposure and Mr. Greensill was telling executives that he hoped to "outgrow" GFG, according to people familiar with the matter.

But GFG remained crucially important to Greensill, typically generating about a third of its total revenue, according to internal Greensill documents reviewed by the Journal.

Greensill was also coming under pressure from German bank regulator BaFin to reduce exposure to GFG at Greensill Bank, according to a statement that Mr. Greensill made as part of the company's insolvency process. A September 2019 internal Greensill document shows that 85% of the bank's assets were linked to GFG.

Last fall, Greensill hired banks to help it raise up to $1 billion in fresh equity. But in December, a private-equity firm that had been expected to invest pulled out in part because of BaFin's concerns over exposure to GFG, according to the statement from Mr. Greensill in relation to the insolvency filing.

---

ADVERTISEMENT

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. McMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,

Defendants.

Civil Action No. 1:20-cv-02031-JSR

**SUMMARY NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**To:** All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of World Wrestling Entertainment, Inc. ("WWE") during the period from February 7, 2019 through February 5, 2020, inclusive, and were damaged thereby ("Settlement Class").

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that Court-appointed Lead Plaintiff, on behalf of itself and all members of the proposed Settlement Class, and WWE, Vincent K. McMahon, George A. Barrios, and Michelle D. Wilson (collectively, "Defendants"), have reached a proposed settlement of the claims in the above-captioned class action (the "Action") in the amount of $39,000,000 (the "Settlement").

A hearing will be held before the Honorable Jed S. Rakoff, either in person or remotely in the Court's discretion, on June 15, 2021, at 4:00 p.m. in Courtroom 14B of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated December 22, 2020; (iii) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (iv) approve Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing, or hold it remotely, without providing another notice. You do NOT need to attend the Settlement Hearing to receive a distribution from the Net Settlement Fund.

**IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT.** If you have not yet received a full Notice and Claim Form, you may obtain copies of these documents by visiting the website for the Settlement, www.WWESecuritiesSettlement.com, or by contacting the Claims Administrator at:

WWE Securities Litigation
c/o Epiq Class Action and Claims Solutions, Inc.
P.O. Box 6389
Portland, OR 97228-6389
800-817-4526

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

LABATON SUCHAROW LLP
Carol C. Villegas, Esq.
140 Broadway
New York, NY 10005
www.labaton.com
settlementquestions@labaton.com
888-219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form *postmarked or submitted online no later than June 10, 2021*. If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice so that it is *received no later than May 25, 2021*. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice, such that they are *received no later than May 25, 2021*.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

DATED: April 5, 2021

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

## Engineer Has Yet to See Reward

Continued from page B1 scandals involving car companies' failures to disclose defects, Congress passed the law ordering NHTSA to create a program to entice company insiders to report auto safety problems. It was meant to emulate one established by the Securities and Exchange Commission in 2011 that has paid approximately $760 million to whistleblowers.

The law required NHTSA to establish the program's rules by June 2017. Under both programs, whistleblowers are eligible to receive 10% to 30% of the penalties collected from a successful investigation.

A federal agenda from last fall shows NHTSA had planned to begin the public rule-making process last month. A similar notice has been published twice a year since 2017. NHTSA's website doesn't mention the whistleblower program.

"This stalling and stonewalling is absolutely inexcusable," Sen. Richard Blumenthal (D., Conn.), a co-sponsor of the bill mandating the program, said.

In March, he and another lawmaker sent a letter to Transportation Secretary Pete Buttigieg asking why rules weren't issued. A spokesman for the secretary said the administration made the program a priority.

Sean McKessy, who oversaw the initial five years of the SEC program, said clear guidelines were essential to starting it. "Otherwise, it's just pages of statutes that can't really get any legs under it," said Mr. McKessy, now at whistleblower law firm Phillips & Cohen LLP.

Mr. Kim said he learned about the U.S. whistleblower law through company-provided training at Hyundai. According to Mr. Kim, he was part of a team at Hyundai responsible for quality problems. He said his group uncovered design flaws on the company's Theta II line of engines that he claims made them prone to serious failures.

These engines were in millions of Hyundai and Kia vehicles sold world-wide, according to company filings.

Mr. Kim said the quality divi-



Kim Gwang-ho was given a plaque by a South Korean civil group in 2017 for his anticorruption work.

sion first categorized the engine failures as a high-importance safety matter in 2014. By the following June, NHTSA, which received complaints through its public database, asked Hyundai executives about the engines, documents submitted to the agency show. Company executives said they didn't consider the failures to be a safety issue, the documents show.

The following month, Mr. Kim's team recommended to its superiors the company recall all vehicles with the engines, he said.

Hyundai recalled some vehicles with the engines in question in September 2015. It blamed the problem on a manu-

facturing process that was since changed, according to the documents.

Mr. Kim said he felt the action was insufficient and misrepresented the scope of the problem. He said he reported his concerns to internal auditors at Hyundai and agonized over whether to go to NHTSA.

In August 2016, he flew from Seoul to Washington, D.C., and brought his daughter to translate as he met with NHTSA investigators, he said. He said he later shared his concerns with regulators and news organizations in Korea, hoping to protect himself from retaliation.

In late October of that year, he said, Hyundai brought him before a disciplinary committee and accused him of breaching confidentiality agreements, leaking company secrets and de-

faming his employer. On Nov. 2 that year, he was fired.

Hyundai filed a criminal complaint against him weeks later, alleging he leaked business secrets and violated the company's trust.

The following February, Korean police executed a search warrant on his home in connection with Hyundai's complaint, he said and police documents show.

The next month, the Korean Anti-Corruption and Civil Rights Commission found Hyundai had wrongly dismissed Mr. Kim for whistleblowing and ordered him reinstated. Hyundai soon settled with Mr. Kim, who left the company with a lump-sum early retirement payment, he said. The criminal complaint against him was dismissed.

Meanwhile, Hyundai's problems with the Theta II engines were growing costlier.

The auto-making group recalled another 1.2 million vehicles for the issue in 2017, and NHTSA opened an investigation into the company's handling of the recalls soon after.

Hyundai and Kia settled a class-action lawsuit from owners in 2019, agreeing to cover nearly 4.2 million Theta II engines with lifetime warranties. The companies set aside roughly $760 million for the settlement and related warranty costs, according to company filings. In October, the car makers set aside another $2.5 billion for the engine problems.

Mr. Kim's lawyers at Constantine Cannon LLP, a firm specializing in whistleblower cases, asked NHTSA to determine Mr. Kim's possible reward now that the agency's penalties have been announced.

They don't know how or when the request will be evaluated without rules, they said. Says Mr. Kim: "If there's a beginning, there must be an end."

> Mr. Kim said he reported his concerns to internal auditors at Hyundai.

---

### BANKRUPTCIES

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1(b)
FOX ROTHSCHILD LLP, 49 Market St., Morristown, NJ 07960, Mark E. Hall, Esq., Martha B. Chovanes, Esq., Michael R. Herz, Esq., mhall@foxrothschild.com, mchovanes@foxrothschild.com, mherz@foxrothschild.com, Telephone: (973) 992-4800, Facsimile: (973) 992-9125, Proposed Counsel for L'Occitane, Inc.
In re:
L'OCCITANE, INC.,  Chapter 11
Debtor.  Case No. 21-10632
Judge: Hon. Michael B. Kaplan

**NOTICE OF ENTRY OF BAR DATE ORDER FOR FILING PROOFS OF CLAIM**

**Entry of Bar Date Order.** On March 31, 2021, the United States Bankruptcy Court for the District of New Jersey entered an Order (Docket No. 237) (the "Bar Date Order") establishing the deadlines for the filing of a "Bar_Date" in the chapter 11 case of L'Occitane, Inc. (the "Debtor") with the Debtor's Court appointed claims and noticing agent, Stretto (the "Claims Agent") in L'Occitane's chapter 11 case (the "Chapter 11 Case"). A detailed explanation of the parties that are/are not required to file claims is set forth in the Bar Date Order, which is available at https://cases.stretto.com/LOccitane. The deadlines established by the Court are as follows:

**General Bar Date.** 5:00 p.m. prevailing Eastern Time on May 7, 2021 is the deadline for all persons and entities holding a claim against the Debtor arising (or deemed to arise) before the January 26, 2021 Petition Date, including any claim arising under Bankruptcy Code section 503(b)(9) for the value of goods received by the Debtor within twenty (20) days before the Petition Date.

**Governmental Bar Date.** 5:00 p.m. prevailing Eastern Time on July 26, 2021 is the date by which all governmental units holding claims against the Debtor arising (or deemed to arise) before the Petition Date (whether secured, unsecured priority or unsecured non-priority) must file proofs of claim.

**Amended Schedules Bar Date.** In the event the Debtor amends its Schedules, holders of claims subject to such amendment are required to file a proof of claim by later of (i) the General Bar Date or (ii) 30 days from the date or amount by which is served with notice that the Debtor has amended its Schedules (or another time period as may be fixed by the Court as the date by which holders of claims affected by the amendment must file proofs of claim with respect to such claim.

**Rejection Bar Date.** The deadline to file a proof of claim for damages relating to the rejection of an executory contract or lease that has already been rejected as of the date hereof is the General Bar Date. If the Debtor rejects a contract or lease subsequent to the date hereof, the deadline to file a proof of claim shall be the later of (i) the General Bar Date, and (ii) thirty (30) calendar days after the date the applicable rejection order is entered on the docket. Notwithstanding anything to the contrary

herein, with respect to nonresidential real property leases, claims arising from the Debtor's rejection of unexpired leases shall include any claims under such unexpired leases as of the Petition Date for purposes of the Bar Date Order and such counter-parties shall not be required to file proofs of claim with respect to prepetition amounts unless until such unexpired leases have been rejected.

**EXCEPT AS TO CERTAIN EXCEPTIONS EXPLICITLY SET FORTH IN THE BAR DATE ORDER, ANY PERSON OR ENTITY WHO FAILS TO FILE A PROOF OF CLAIM, AS APPLICABLE, ON OR BEFORE THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION.**

**Contents of Proofs of Claim.** Subject to the Bar Date Order, each claim form must (i) be written in English; (ii) include a claim amount denominated in United States dollars; (iii) conform substantially to the Proof of Claim Form; (iv) include supporting documentation in accordance with Bankruptcy Rules 3001(c) and 3001(d); and (v) be signed by the holder of the claim or by an authorized agent or legal representative of the holder of the claim. Each claim form must be submitted and actually received prior to the applicable Bar Date in the manner set forth further below and in the Bar Date Order. Proofs of claim sent by facsimile, telecopy, or electronic mail will not be accepted. A detailed explanation of the parties, the claims requirements and process is available in the Bar Date Order, which is available at https://cases.stretto.com/LOccitane and as specified below.

**Submitting Claims and Timely Service.** Each claim form including supporting documentation, must be submitted that is **actually received** on or before the applicable Bar Date: (i) by completing the applicable form, copies of which can be accessed at the Claims Agent's website https://cases.stretto.com/LOccitane/file-a-claim/ and following the directions given therein and using the electronic interface on the Claims Agent website; or (ii) by regular mail, courier service, overnight mail or other hand delivery, so as to be actually received by the Claims Agent at the following address: L'Occitane, Inc. Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

**EXCEPT AS EXPRESSLY PERMITTED ABOVE, A CLAIM FORM OTHERWISE SUBMITTED BY FACSIMILE, TELECOPY, ELECTRONIC MAIL, OR OTHER FORM OF ELECTRONIC SUBMISSION WILL NOT BE ACCEPTED.**

**Access to Claim Forms and Additional Information.** If you have any questions regarding the claims process and/or if you wish to obtain a copy of the Bar Date Motion, the Bar Date Order (which contains a more detailed description of the requirements for filing proofs of claim), a Proof of Claim Form or **related** documents, you may request them in writing from the Claims Agent. If you have any questions concerning the filing or processing of claims, you may contact the Claims Agent at 855-434-5886 (toll-free) or 949-202-5399 (international) or via electronic mail LOccitaneInquiries@stretto.com.

### BUSINESS OPPORTUNITIES

**MEGA C-Store/Gas/Real Estate**
High Volume 4 Years NEW location.
2019 Gross Sales $8.3M+
- 10 Gas Positions - 87,89,93 & Diesel
- No Supply Agreement Unbranded 4,300 SF
- Beautifully Built Stone Building, Beer, Lotto, Food
Sales, Grab & Go Food & Deli
*New Haven County, Connecticut*
Very Profitable/Strong Brand
PRICE: $7,395,000
Randy 203-509-4005

---

THE WALL STREET JOURNAL.

## THE MARKETPLACE

ADVERTISE TODAY

(800) 366-3975

For more information visit:
wsj.com/classifieds

© 2021 Dow Jones & Company, Inc.
All Rights Reserved.

IAN TUTTLE/EPA/SHUTTERSTOCK
DEBJAN SHI/BLOOMBERG NEWS
JEAN CHUNG FOR THE WALL STREET JOURNAL

# Labaton Sucharow LLP Announces Settlement of Class Action Involving Purchasers of World Wrestling Entertainment, Inc. Common Stock

NEWS PROVIDED BY
**Labaton Sucharow LLP** ➝
Apr 05, 2021, 08:00 ET

NEW YORK, April 5, 2021 /PRNewswire/ --

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

    vs.

WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. McMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,

    Defendants.

Civil Action No. 1:20-cv-02031-JSR

**SUMMARY NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**To: All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of World Wrestling Entertainment, Inc. ("WWE") during the period from February 7, 2019 through February 5, 2020, inclusive, and were damaged thereby ("Settlement Class").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that Court-appointed Lead Plaintiff, on behalf of itself and all members of the proposed Settlement Class, and WWE, Vincent K. McMahon, George A. Barrios, and Michelle D. Wilson (collectively, "Defendants"), have reached a proposed settlement of the claims in the above-captioned class action (the "Action") in the amount of $39,000,000 (the "Settlement").

A hearing will be held before the Honorable Jed S. Rakoff, either in person or remotely in the Court's discretion, on June 15, 2021, at 4:00 p.m. in Courtroom 14B of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated December 22, 2020; (iii) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (iv) approve Lead Counsel's Fee and Expense Application.  The Court may change the date of the Settlement Hearing, or hold it remotely, without providing another notice.  You do NOT need to attend the Settlement Hearing to receive a distribution from the Net Settlement Fund.

**IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT.**  If you have not yet received a full Notice and Claim Form, you may obtain copies of these documents by visiting the website for the Settlement, www.WWESecuritiesSettlement.com, or by contacting the Claims Administrator at:

*WWE Securities Litigation*

c/o Epiq

P.O. Box 6389

Portland, OR 97228-6389

800-817-4526

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

**LABATON SUCHAROW LLP**

Carol C. Villegas, Esq.

140 Broadway

New York, NY 10005

www.labaton.com

settlementquestions@labaton.com

888-219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form ***postmarked or submitted online no later than June 10, 2021.***  If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice so that it is ***received no later than May 25, 2021.***  If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice, such that they are ***received no later than May 25, 2021***.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

DATED: April 5, 2021

BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

SOURCE// Labaton Sucharow LLP

URL// www.WWESecuritiesSettlement.com

SOURCE Labaton Sucharow LLP

Related Links

http://www.labaton.com

# EXHIBIT C

# WWE_Exclusion Request No. 1

*WWE Securities Litigation*

c/o Epiq

P.O. Box 6389

Portland, OR 97228-6389

**Paul Vienneau**

**Shareholder of one (1) Class A common stock – No. A16139**

**Acquired on April 2, 2009**

To whom it may concern,

With this letter, I'm requesting to be excluded from the Settlement Class *in City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.*, No. 1:20-cv-02031-JSR (S.D.N.Y.).

Best regards,

Paul Vienneau

Paul Vienneau

WWE Securities Litigation
c/o Epiq
P.O. Box 6389
Portland, OR 97228-6389

9722836389 B042